[Civ. No. 29108. Second Dist., Div. Four. Nov. 3, 1966.]

RALKE COMPANY, INC., Plaintiff and Appellant, v. ESQUIRE BUILDING MAINTENANCE COMPANY, INC., Defendant and Respondent.

Belcher, Henzie & Biegenzahn and William I. Chertok for Plaintiff and Appellant.

Wyman, Finell & Rothman and Charles L. Fonarow for Defendant and Respondent.

FOX, J.* — Plaintiff Ralke Company, Inc. has appealed from a judgment of dismissal due to failure to amend its second amended complaint after the demurrer of defendant was sustained but with leave to further amend.

Based on the allegations of its amended complaint plaintiff seeks to recover damages on the theory of implied indemnity.

Plaintiff alleges that in February 1960 it entered into a written contract with defendant whereby defendant was engaged as an independent contractor to perform maintenance work on the premises where plaintiff conducted its business. Defendant agreed in said contract, *inter alia*, to scrub and rinse the tile floors, apply high-grade finish and to buff floors on a monthly basis, to supply all necessary cleaning equipment, to carry necessary insurance to protect plaintiff, and defendant warranted that all of its employees were thoroughly trained, bonded, and supervised. Defendant further promised that: ''All work will be performed in a workmanlike and satisfactory manner'' and agreed to perform its work in a skillful and proper manner.

On May 4, 1961, while said contract was in force, an employee of defendant created a dangerous condition by applying wet wax to the floor near the rear entrance to plaintiff's place of business during working hours, and then leaving the condition caused by the wet wax without providing any warning or safe-guards for patrons using the rear door. These acts by the employee of defendant were performed without the consent, participation or knowledge of plaintiff.

Shortly after defendant's employee left the rear entrance area in said dangerous condition, a patron of plaintiff, one Jenkins, entered the rear entrance and was caused to fall by said condition. Jenkins was injured by the fall and in July 1961 brought suit against plaintiff and defendant as joint tortfeasors. In August 1961 plaintiff demanded that defendant undertake the defense of plaintiff and hold plaintiff harmless

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

for expenses and claims made by Jenkins. Some 10 days later defendant rejected the demand.

Jenkins recovered a joint judgment against plaintiff and defendant for $15,000 plus costs of $183.06. This judgment was rendered against plaintiff, according to the allegations of the amended complaint, on the basis of its passive or secondary negligence, because of the duty plaintiff owed to Jenkins as a business invitee. It is further alleged that plaintiff's liability was caused by the acts of defendant in creating the said dangerous condition[1] and that plaintiff's liability was based upon an imputation of the negligence of defendant.

Plaintiff paid one-half of said judgment, namely, $7,591.53 to Jenkins, pursuant to an agreement in writing between plaintiff and defendant that such payment would not prejudice plaintiff's rights against defendant, that plaintiff did not make the payment as a volunteer and that such payment was not an admission of liability by plaintiff.

Plaintiff incurred attorneys' fees and expenses in defending the Jenkins action and will incur further expenses in this action.

 Prior to commencing this action, plaintiff demanded of defendant the amount plaintiff paid in the Jenkins suit, both to Jenkins and by way of attorneys' fees, but defendant refused to pay the same. Plaintiff also alleges that in the said contract between plaintiff and defendant, defendant impliedly promised to indemnify plaintiff for any and all losses, costs, damage or liability or expense plaintiff might sustain by reason of defendant performing its work in an improper or negligent manner. Defendant performed its work in an improper and negligent manner, and defendant has breached its implied promise to indemnify by refusing to defend and hold plaintiff harmless in the Jenkins action and by refusing to reimburse plaintiff for its expenses and payments made as the result of the judgment in the Jenkins action.

Plaintiff contends that its second amended complaint alleges facts entitling it to relief upon the theory of implied indemnity. The cases upon which it principally relies: viz., *San Francisco Unified Sch. Dist.* v. *California Bldg. etc. Co.,* 162 Cal.App.2d 434 [328 P.2d 785]; *De La Forest* v. *Yandle,* 171 Cal.App.2d 59 [340 P.2d 52]; *Alisal Sanitary Dist.* v. *Ken-*

---

[1]Defendant says in its brief (p. 12): "It is true that Esquire waxed the floor upon which Jenkins fell, and that Ralke did not."

*nedy,* 180 Cal.App.2d 69 [4 Cal.Rptr. 379]; and *Montgomery Ward & Co.* v. *KPIX Westinghouse Broadcasting Co.,* 198 Cal.App.2d 759 [18 Cal.. Rptr. 341], support its position. At oral argument counsel for defendant-respondent conceded that the amended complaint on its face stated a cause of action.

■ "A right to implied indemnity among tortfeasors may arise out of some contractual relationship between the parties, or from equitable considerations." (*Herrero* v. *Atkinson,* 227 Cal.App.2d 69, 74 [38 Cal.Rptr. 490, 8 A.L.R.3d 629].)

■ ". . . The right of *indemnity* rests upon a difference between the primary and secondary liability of two persons each of whom is made responsible by the law to an injured party. It is a right which enures to a person who, without active fault on his part, has been compelled by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable. The difference between primary and secondary liability is not based on a difference in *degrees* of negligence or on any doctrine of *comparative* negligence—a doctrine which, indeed, is not recognized by the common law; . . . . It depends on a difference in the *character* or *kind* of the wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person. . . . [Italics added by the Court.]" (*Builders Supply Co.* v. *McCabe,* 366 Pa. 322, 325-326 [77 A.2d 368, 370], quoted in *Pierce* v. *Turner,* 205 Cal.App.2d 264, 267-268 [23 Cal.Rptr. 115].) The *Pierce* court later made the observation that "the question of whether indemnity is available is usually one of fact," (*Id.* p. 268), relying on *Alisal Sanitary Dist.* v. *Kennedy,* 180 Cal. App.2d 69, *supra,* and quoting the following from pages 79-80: " '. . . . The nature and scope of the relationship between the plaintiff and the defendants; the obligations owing by one to the other; the extent of the participation of the plaintiff in the affirmative acts of negligence; the physical connection of the plaintiff, if any, with the defendants' acts of negligence by knowledge or acquiescence; or the failure of the plaintiff to perform some duty it may have undertaken by virtue of its agreement—are all questions of fact that should be left to the jury.' "

The *Pierce* court also cites *San Francisco Unified Sch. Dist.* v. *California Bldg. etc. Co.,* 162 Cal.App.2d 434, *supra,* quoting from page 449: ". . . . Whether the school district should be precluded from recovery [by way of indemnification] by

reason of its conduct, that is, whether the conduct of the district helped to bring about the damage, is at least a question of fact and should have been left to the jury.'' *Herrero* v. *Atkinson, supra* (p. 74) points out that whether or not indemnity should be allowed depends ''upon the facts of each case.''

 *Cahill Bros., Inc.* v. *Clementina Co.*, 208 Cal.App.2d 367 [25 Cal.Rptr. 301], relied on by defendant, is not opposed to these principles. There it was determined in the trial of the suit for indemnification that the individual who actively supervised the construction of the barricade that proved inadequate as a safeguard was acting in a dual managerial capacity for both the general contractor and the subcontractor. There could therefore be no difference in the character or kind of negligence of the parties that caused the injury to the third party. As a consequence there could be no indemnification. In the instant case it is alleged that the negligent acts of the defendant were done without the knowledge, consent or participation of plaintiff.

It is thus apparent on the face of the amended complaint that the lower court was not in a position to determine that the negligence on the part of plaintiff precludes its recovery.

The trial court sustained defendant's demurrer to the amended complaint on the ground that the court's files, of which it took judicial notice, showed that Ralke was precluded from recovering indemnity by reason of the jury's verdict in the prior Jenkins case which found for Jenkins and against both defendants therein (plaintiff and defendant herein). A joint judgment was rendered against them.

Defendant argues that the Jenkins judgment necessarily determined that plaintiff's negligence was of such a character or kind as to constitute affirmative or active negligence, thus foreclosing plaintiff from any recovery upon the theory of indemnification. In making this contention defendant overlooks the facts that plaintiff and defendant were not adversaries in the Jenkins case, that the issue of the character or kind of plaintiff's negligence was never submitted to the jury generally, or by special interrogatories, and that a determination of that issue was unnecessary to determine Jenkins' rights.

The invalidity of defendant's position is pointed out in *Baldwin Contracting Co.* v. *Winston Steel Works, Inc.*, 236 Cal.App.2d 565 [46 Cal.Rptr. 421]. In that case Baldwin sued Winston and Sacramento to recover monies Baldwin had paid to one Steele (Sacramento's foreman) as the result of a judg-

ment obtained by Steele against Baldwin. Baldwin's foreman, Phillips, had inspected and observed high voltage wires in the proximity of the work to be done but he had not taken any affirmative action to correct the condition nor had he had barricades erected until after Steele had come in contact with those wires while working on the construction of the building. The court directed a verdict in favor of Baldwin. This was reversed on appeal. At pages 571-572 the court stated: "The principal question here is whether there is any substantial evidence that Baldwin, through its agent Phillips, was guilty of active negligence contributing proximately to Steele's injury.

"The judgment obtained by Steele against Baldwin in Placer County does not establish Baldwin's active negligence as a matter of law by collateral estoppel. There were no special interrogatories addressed to the jury. The judgment could well have been based on the general contractor's common law duty to afford the subcontractor's employees a safe place to work [citation] or on the more stringent statutory liability imposed on the general contractor as an 'employer' under sections 6304 et seq., of the Labor Code [citations].

"If Baldwin's liability to Steele was attributable solely to the failure of its subcontractors in their operations to take the necessary precautionary measures for which the general contractor is also made responsible by operation of law, Baldwin could recover the amount of the Steele judgment from Winston or from Sacramento even in the absence of a hold harmless agreement on the basis of implied indemnification [citations].

". . . Whether the negligence is active or passive in nature is generally a question of fact for jury determination [citations]."

In this context it is important to remember that plaintiff and defendant were codefendants, not adversaries, in the Jenkins case and that the factual determination of the character or kind of plaintiff's negligence was not submitted to the jury in Jenkins by special interrogatories. Thus, plaintiff has not had its day in court to determine these vital issues.

Defendant relies heavily upon *Cahill Bros., Inc.* v. *Clementina Co., supra,* 208 Cal.App.2d 367. But it misconstrues the application of that case just as did Winston in *Baldwin Contracting Co., supra,* where the court at page 575 stated: "Appellant Winston, citing *Cahill Bros., Inc.* v. *Clementina Co.,*

*supra,* contends that the trial court should have found, as a matter of law, that Baldwin actively participated in the negligent conduct proximately resulting in Steele's injury and that it was error to deny appellants' [Winston's] motions for judgment notwithstanding the verdict. We do not agree. In *Cahill, the same individual responsible for the negligent omission resulting in the injury was acting in a dual managerial capacity for both the general contractor and the subcontractor. He actively supervised the construction of the barricade which proved inadequate as a safeguard.* It was, therefore, inconceivable that the indemnitee could be any more passively negligent than the indemnitor." [Italics added.]

In the instant case, just as in *Baldwin Contracting Co., supra,* two separate parties have acted in such a way as to cause injuries to a third party. Plaintiff is entitled to have the character or kind of its negligence determined by the trier of fact in this adversary proceeding. In *Cahill, supra,* each party committed the same acts through a person acting in a dual managerial capacity for both. Thus, it is quite apparent there could be no difference in their negligence.

At oral argument defendant sought to fortify its position by referring to *King* v. *Timber Structures, Inc. of Cal.,* 240 Cal.App.2d 178 [49 Cal.Rptr. 414]. That case, however, is not here apposite. In that case Safeway Stores had brought an action against King, its general contractor and his surety, on a contract of indemnity for indemnification growing out of damages that had been sustained by workmen (and paid by Safeway) when the building collapsed during the course of construction. King filed a cross-complaint against Timber Structures, a subcontractor, which had produced and erected the trusses, On motion of the cross-defendant, severance of the issues raised by the cross-complainant was granted. In the "first" trial the judge found that the work performed by King was done negligently and in violation of the contract and that the performance of the work in this manner proximately caused the building to collapse.[2] The trial judge, however, did not decide whether King's negligence was active or passive.

The trial on the cross-complaint referred to as the "second" trial, was before another judge. He had before him the findings

---

[2]The judgment in favor of Safeway was affirmed in *Safeway Stores, Inc.* v. *Massachusetts Bonding & Ins. Co.,* 202 Cal.App.2d 99 [20 Cal. Rptr. 820].

and conclusions of the judge who conducted the first trial and also the transcript and exhibits of the first trial. From this material he determined that the negligence of King, the contractor, was *active* negligence (see p. 185 of 240 Cal.App. 2d), and therefore he was not entitled to indemnity from Timber Structures, the cross-defendant. (Pp. 182-183.) From the foregoing it is apparent that the second trial judge determined as a fact from the record, which included the evidence in the previous trial, the character or kind of negligence the general contractor had committed.

Defendant would have this court speculate as to the basis upon which the jury in the Jenkins case determined that the Ralke Company was guilty of active negligence. It argues that such negligence could only have been attributed to Ralke on two grounds and declares that these constituted "active" negligence and therefore preclude Ralke's recovery in this action.

Inspection of the lower court file which has been made a part of the record on this appeal does not indicate that the character or kind of negligence attributed to Ralke was therein determined. It therefore follows that plaintiff is entitled to have the character or kind of its negligence in the Jenkins case determined in this adversary proceeding.

The judgment is reversed.

Files, P. J., and Kingsley, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied December 28, 1966.