[Civ. No. 23336.   First Dist., Div. Three.   June 21, 1967.]

A. BERNARD MUTH et al., Plaintiffs and Respondents, v. A. URRICELQUI, Defendant and Appellant.

904

George F. Jansen for Defendant and Appellant.

Cushing, Cullinan, Hancock & Rothert and Harlow P. Rothert for Plaintiffs and Respondents.

BROWN (H. C.), J.—Appellant A. Urricelqui, an excavation and grading contractor, appeals from a judgment entered against him on a verdict in an indemnity action filed by A. Bernard Muth, Leland E. Muth and Albert R. Muth (hereinafter referred to as Muths), general building contractors.

In a prior action Richard and Mary Hackler were awarded judgment against Muths, the general contractors, for damages caused to their (Hacklers') house by reason of landslide and subsidence. Muths in the present action seek to be indemnified, claiming that the subcontractors performed their work in a negligent manner, proximately causing Hacklers' damages. Muths named as defendants in their complaint three of their subcontractors, i.e., (1) Hersey Inspection Bureau, (2) Riffe, Shipherd & Jones, and (3) Urricelqui. Hersey Inspection Bureau did not appear in the action.[1] The jury rendered a

---

[1]Hersey Inspection Bureau had ceased doing business prior to the completion of the tract and did not appear in the action. Although named in the complaint by Muths as a defendant, there is no evidence that it was served with process.

verdict against appellant Urricelqui only in an amount sufficient to indemnify Muths for the award against them in the *Hackler* v. *Muth* action.

Urricelqui (hereinafter referred to as appellant) contends (1) Muths' active participation in the conduct or omission which caused the loss precludes recovery in indemnity, and (2) the trial court erred in the instructions given to the jury and in failing to give certain instructions offered by appellant.

The parties are in essential agreement as to the facts.

Muths, licensed building contractors, in 1955 commenced construction of a residential subdivision on a tract of land they owned in Orinda, California. They engaged various subcontractors, including Hersey Inspection Bureau, as soil engineers (hereinafter referred to as Hersey) ; Riffe, Shipherd & Jones, as civil engineers (hereinafter referred to as Riffe) and appellant, as the grading contractor. Hersey was engaged to make a soils investigation of the natural ground, to issue a preliminary soils report, to make recommendations regarding the natural ground and the slope of the excavated or fill banks, to make tests of the compaction of fill, and to issue reports of the fill compaction tests. As soil engineering specialists, Hersey had charge of the fill area from the inception of the subdivision project. Riffe's duties were to prepare tentative subdivision plans, finished construction plans, and the grading plans for the subdivision.

Muths engaged appellant, a licensed grading contractor, for the fill and grading work. Appellant and Muths entered into a written contract whereby appellant agreed to perform " [I]n a good and workmanlike manner, under the direction of the Owner,[2] or his authorized representative, all of the work and improvements set forth below and such work shall be done in accordance with 'Construction Plans' and 'Development Plan' of Tract 2245, Warford Mesa, Unit I, prepared by NORMAN T. RIFFE, CIVIL ENGINEER, a partnership, hereby made a part of this contract, and to the specifications and requirements of the County of Contra Costa. . . . The price paid per cubic yard for earthwork shall include all work necessary to clear the area of debris and trees and grass, excavate, and grade lot and street areas in accordance with F.H.A. Minimum Property Requirements and County requirements to the lines and grades shown on the Construction Plans and Devel-

---

[2]Muth was both the owner of the tract and the general contractor.

opment Plans, . . . The party of the First Part shall hold harmless Albert R. Muth and Sons, the party of the Second Part, for any Public Liability or Property Damage, . . . which may be incurred during completion of this contract.''

After the lot involved in this litigation was graded and filled, Muths constructed a house upon the lot, built a driveway and did the finish grading and sloping the top of the lot so that the surface water would drain to the street. Muths also employed a subcontractor to construct the water and sewer lines.

Respondents sold the completed house and the lot to the Hacklers on June 25, 1956, for a sale price of $20,300. Thereafter substantial damage was caused to the house by reason of the subsiding and sliding of the land. The Hacklers instituted proceedings against Muths and recovered judgment for $22,500 on condition that Hacklers reconvey the lot and house back to Muths. Muths' suit for indemnity and the judgment against appellant followed.

The evidence disclosed that representatives of the Hersey soils engineers were present during the filling operations but, according to good practice, the soils engineers were not required to examine and check every truckload of fill prior to its being used at the fill site. It was also accepted practice for soils engineers (a) to make representative tests to determine both the quality and density of the fill, (b) to check the natural land for organic material, and (c) to recommend a maximum slope of two feet horizontal to one foot vertical. The soils engineers made the necessary tests and advised appellant to remove all grass and brush from the natural ground before placing of fill and, further, in grading not to exceed a maximum slope of two feet horizontal and one foot vertical.

The lot purchased by the Hacklers was one of many lots in a large subdivision and was the only one that subsided.

An expert witness, John A. Trantina, made an examination of the Hackler property and of the adjacent land after the slide, including test borings and a soil analysis. He testified that the cause of the slide was the failure of appellant to strip the ground of organic material and to remove vegetation and wood debris from the fill. Mr. Trantina also found that the slope of the land as graded by appellant was one and one-half feet to one foot, which is steeper than the recommended two feet to one foot, and that the variation in slope was a contri-

buting factor to the settlement of the land. Muths did not direct or supervise Hersey, Riffe or appellant in any of this work. Appellant admitted that Muths did not instruct him in how to strip, excavate or fill the lots but merely informed appellant of the required end result.

■ Muths, as the owners of the tract and the general contractors, could not escape liability for the damage to the Hacklers by seeking refuge in the defense that the damages were proximately caused by the negligence of one or more of their subcontractors. In *Dow* v. *Holly Mfg. Co.*, 49 Cal.2d 720, 725 [321 P.2d 736] the court said: " 'It appears, however, that the analogy of *MacPherson* v. *Buick Motor Co.* is at last being accepted. Several recent decisions have placed building contractors on the same footing as sellers of goods, and have held them to the general standard of reasonable care for the protection of anyone who may foreseeably be endangered by the negligence, even after acceptance of the work.' [Citing Prosser on Torts (2d ed.) p. 517; *Knell* v. *Morris*, 39 Cal.2d 450 [247 P.2d 352]] . . . There is no reasonable distinction between the owner's inability to escape liability and that of the contractor. The contractor, equally with the owner of the property, has supervision over the entire building and its construction, including the work performed by a subcontractor, and where he negligently creates a condition, either by himself or through a subcontractor, he is primarily[3] responsible for that condition and the consequences that may follow from it. . . .' "

Muths, having been held originally responsible to the Hacklers, sought indemnification from the subcontractors alleging that they were actively negligent and created the dangerous condition which proximately caused the Hacklers' loss.

■ The judgment in favor of Hacklers against Muths in the original action did not establish Muths' negligence so as to prohibit them from bringing this suit for indemnity. The issue of the kind or character of Muths' negligence was never submitted to the jury either generally or by special interrogatories and a determination of that issue was unnecessary to adjudicate Hacklers' rights. Muths and appellant were not adversaries in the Hackler action. (See *Ralke Co., Inc.* v. *Esquire Bldg. Maintenance Co., Inc.*, 246 Cal.App.2d 141 [54 Cal.Rptr. 556]; *Baldwin Contracting Co.* v. *Winston*

---

[3]In indemnity actions this liability is referred to as secondary and the one actively negligent is referred to as primarily responsible.

*Steel Works, Inc.*, 236 Cal.App.2d 565, 571-572 [46 Cal.Rptr. 421].)

Muths engaged appellant to do the grading and fill work by written contract wherein appellant agreed to hold Muths harmless from public liability or property damage. This agreement was entered into subsequent to appellant commencing work. It is unnecessary to consider the binding effect of the hold-harmless provision as it fails to provide indemnity for the indemnitee's negligence in clear and explicit language. (See *Goldman* v. *Ecco-Phoenix Elec. Corp.*, 62 Cal.2d 40 [41 Cal.Rptr. 73, 396 P.2d 377] ; *Vinnel Co.* v. *Pacific Elec. Ry. Co.*, 52 Cal.2d 411 [340 P.2d 604].) Muths do not base their claim for indemnity on the agreement but rely upon the doctrine of implied indemnity.

█ The right to implied indemnity while relatively recent in the law of California is now well established. (See *City & County of San Francisco* v. *Ho Sing*, 51 Cal.2d 127 [330 P.2d 802] ; Prosser on Torts (3d ed. 1964) p. 480-487; *Weyerhaeuser S. S. Co.* v. *Nacirema Co.*, 355 U.S. 563, 568 [2 L.Ed.2d 491, 494, 78 S.Ct. 438] ; *San Francisco Unified School Dist.* v. *California Bldg. etc. Co.*, 162 Cal.App.2d 434, 447 [328 P.2d 785] ; *Cahill Bros., Inc.* v. *Clementina Co.*, 208 Cal.App.2d 367, 381-382 [25 Cal.Rptr. 301] ; *Alisal Sanitary Dist.* v. *Kennedy*, 180 Cal.App.2d 69 [4 Cal.Rptr. 379] ; *Herrero* v. *Atkinson*, 227 Cal.App2d 69 [38 Cal.Rptr. 490, 8 A.L.R.3d 629] ; *Baldwin Contracting Co.* v. *Winston Steel Works, Inc.*, *supra*; *Ralke Co., Inc.* v. *Esquire Bldg. Maintenance Co., Inc.*, *supra*; *De La Forest* v. *Yandle*, 171 Cal.App. 2d 59 [340 P.2d 52] ; *Montgomery Ward & Co.* v. *KPIX Westinghouse Broadcasting Co.*, 198 Cal.App.2d 759 [18 Cal.Rptr. 341] ; *Aerojet General Corp.* v. *D. Zelinsky & Sons*, 249 Cal.App.2d 604 [57 Cal.Rptr. 701].) The import of these cases is that where each of two persons is made responsible by law to an injured party, the one (who is passively negligent) to whom the right of indemnity inures is entitled to shift the entire liability for the loss to the other party (whose active negligence was the proximate immediate cause of the loss). █ Accordingly a right of implied indemnification may arise as a result of contract or other equitable considerations. The basic theory is not novel. It is a shifting of the risk of loss from one upon whom it falls to the person who in justice should bear it.

" '. . . The right of *indemnity* rests upon a difference between the primary and secondary liability of two persons

each of whom is made responsible by the law to an injured party. It is a right which enures to a person who, without active fault on his part, has been compelled by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable. ■ The difference between primary and secondary liability is not based on a difference in degrees of negligence or on any doctrine of *comparative* negligence—a doctrine which, indeed, is not recognized by the common law. . . . It depends on a difference in the *character* or *kind* of the wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person. . . . [Italics added by the Court.]' (*Builders Supply Co.* v. *McCabe,* 366 Pa. 322, 325-326 [77 A.2d 368, 370], quoted in *Pierce* v. *Turner,* 205 Cal.App.2d 264, 267-268 [23 Cal.Rptr. 115].) ■ The *Pierce* court later made the observation that 'the question of whether indemnity is available is usually one of fact,' (*Id.* p. 268), relying on *Alisal Sanitary Dist.* v. *Kennedy,* 180 Cal.App.2d 69, *supra,* and quoting the following from pages 79-80: ' ". . . The nature and scope of the relationship between the plaintiff and the defendants; the obligations owing by one to the other; the extent of the participation of the plaintiff in the affirmative acts of negligence; the physical connection of the plaintiff, if any, with the defendants' acts of negligence by knowledge or acquiescence; or the failure of the plaintiff to perform some duty it may have undertaken by virtue of its agreement—are all questions of fact that should be left to the jury." ' . . . *Herrero* v. *Atkinson, supra,* (p. 74) points out that whether or not indemnity should be allowed depends 'upon the facts of each case.' " (*Ralke Co., Inc.* v. *Esquire Bldg. Maintenance Co., Inc.,* 246 Cal.App.2d 141, 144-145 [54 Cal.Rptr. 556].)

■ Appellant, although conceding his own negligence, contends that Muths' participation in the final grading just prior to construction of the Hacklers' house and his work in sloping the property for the runoff of surface water constituted active participation in the work with appellant which is fatal to a claim for indemnity. There was no evidence produced to the effect that Muths' actions caused or contributed to the slide. There was ample evidence that appellant's negligence in failing to strip the fill of organic material and in not following the engineers' directions as to sloping the land was the cause of the damage. The extent of the participation of

Muths in the affirmative acts of negligence of appellant was a question for the jury. (*Ralke Co., Inc.* v. *Esquire Bldg. Maintenance Co., Inc., supra.*) The jury having decided the issue adverse to appellant on substantial evidence, its determination will not be disturbed on appeal.

Appellant contends that Muths' negligent participation is established as a matter of law. He directs attention to Muths' complaint for indemnity which charges each of Muths' subcontractors, ' Hersey, Riffe and appellant, with negligently performing their jobs. A fourth cause of action charges that the joint negligence of all three subcontractors caused the damage to the Hacklers' property. ■ A pleading in a prior action may be offered as an evidentiary admission against the pleader or to impeach. (*Meyer* v. *State Board of Equalization,* 42 Cal.2d 376, 385 [267 P.2d 257].) Appellant argues that these allegations are an admission that Hersey and Riffe were the representatives and agents of Muths and, therefore, the negligence of such agents should be imputed to Muths as principals, precluding indemnity. Appellant relied on *Cahill Bros., Inc.* v. *Clementina Co., supra,* and *Horn & Barker, Inc.* v. *Macco Corp.,* 228 Cal.App.2d 96 [39 Cal.Rptr. 320]. In both cases cited the general contractor was precluded from indemnity against a negligent subcontractor for the reason that his *own employees* were actively negligent and their negligence proximately contributed to the damage.

■ " ' 'An independent contractor is one who renders service in the course of an independent employment or occupation, under the control of his principal as to the result of his work only and not as to the means by which such result is accomplished.' (*Bates* v. *Industrial Acc. Com.,* 156 Cal.App 2d 713, 717 [320 P.2d 167] ; Lab. Code, § 3353.) ■■ The most important factor, in determining whether one is an employee or an independent contractor, is the right to control the manner and means of accomplishing the result desired; and, in this regard, the right to discharge an employee at will, without cause, is strong evidence of the employer's control. (*City of Los Angeles* v. *Vaughn,* 55 Cal.2d 198, 201 [10 Cal. Rptr. 457, 358 P.2d 913].) '' (*Cahill Bros., Inc.* v. *Clementina Co.,* 208 Cal.App.2d 367, 380 [25 Cal.Rptr. 301].) ■ In the instant case Hersey, Riffe and appellant were subcontractors, not employees. Muths did not control their activities or supervise their work. They merely told the subcontractors the desired end results. Their negligence, if any, is not attributable to Muths.

■ The fact that Muths had the authority to inspect the work of appellant as it progressed and to specify changes but failed to inspect or advise does not amount to active negligence.

In *Safeway Stores, Inc.* v. *Massachusetts Bonding & Ins. Co.,* 202 Cal.App.2d 99, 110, 111 [20 Cal.Rptr. 820], the court said: "We are presented here with a relationship of owner and independent contractor which is governed by the general principles and does not fall within any of the exceptions set forth above in the *McDonald* case. Such relationship insulated the owner from liability for the acts or omissions of the contractor and the latter's subcontractors. No change in the relationship was effected by the owner's retention of the right of general supervision over the work. *However, the right to act did not raise the duty to act.* Safeway had the right to have the contractor remove materials condemned by Safeway. This did not, nor does any provision of the contract, subject Safeway to any obligation of inspecting and removing materials. No duty was imposed on Safeway to order that the roof trusses not be raised. The responsibility for the work remained at all times that of the contractor. . . . Even if we were to assume, *arguendo,* that Safeway was negligent in not compelling the trusses to be rejected, our above holding would remain unchanged. The only negligence which could be thus posited of Safeway was merely *passive* in nature and not *active* or *affirmative.* . . ." [Italics added.]

Here appellant concedes that Muths did not supervise the grading or instruct on the method to complete the job. Appellant had been advised by Hersey to remove the vegetation, wood and debris from the fill and from the virgin soil. He also had been advised as to the dimensions of grading. In addition, appellant was an experienced grader who had previously been engaged by Muths on an earlier subdivision. Muths' negligence, if any, was passive and does not foreclose his right to indemnity.

■ The appellant finally contends that certain instructions in effect charged the jury that negligent supervision or negligent failure to supervise constituted passive negligence which would not bar recovery in indemnity. The challenged instruction read as follows: "Passive negligence on the part of plaintiffs, if any there was, may consist of a failure on the part of plaintiffs in the supervision or inspection of work to discover or correct a defective condition or unsatisfactory performance in said work caused by the initial negligence of

one or more defendant, if any there was." This was a proper instruction. There was no evidence that Muths did any supervision of appellant's work or that they had a duty to inspect or supervise.

Appellant offered the following instruction: "If the Plaintiffs or their authorized representatives undertook to direct or supervise the grading contractor in the stripping and filling of the Hackler lot and such direction or supervision was negligently done, such conduct would constitute active negligence and would bar recovery by plaintiffs." This instruction and other similar instructions were correctly refused by the trial court. Although appellant correctly states that supervision or failure to supervise can be active negligence under a given set of facts (see e.g., *Pierce* v. *Turner*, 205 Cal.App.2d 264, 268 [23 Cal.Rptr. 115]), here any negligent supervision on the part of the authorized representative (Hersey), who was an independent contractor, would not bar Muths' right of indemnification from appellant for the reasons heretofore given.

The trial court correctly instructed the jury that: "Active negligence may consist of participating by plaintiffs in an affirmative act of negligence on the part of one or more defendant, the physical connection of the plaintiffs with the initial or affirmative act of negligence by one or more defendants by knowledge and acquiescence in said negligence of said defendants, if any, or any other affirmative action as distinguished from inaction on the part of the plaintiffs constituting negligence." (See *Alisal Sanitary Dist.* v. *Kennedy, supra.*)

The trial court also refused to instruct the jury on sections 1549, 1589 and 1595 of the Civil Code.[4] These sections apply only if Muths had the duty to supervise. We have heretofore disposed of this requirement, i.e., that Muths had no duty to supervise and that negligent supervision by Hersey, if any, could not bar Muths' indemnification from appellant. The instructions by the trial court adequately covered all

---

[4]Section 1549 of the Civil Code reads as follows: "A contract is an agreement to do or not to do a certain thing."

Section 1589 of the Civil Code reads as follows: "A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting."

. Section 1595 of the Civil Code reads as follows: "The object of a contract is the thing which it is agreed, on the part of the party receiving the consideration, to do or not to do."

issues raised and those requested by appellant were inapplicable to the facts of this case.

The judgment is affirmed.

Draper P. J., and Salsman, J., concurred.