[Civ. No. 12471. Third Dist. Nov. 30, 1971.]

FORD MOTOR COMPANY, Plaintiff and Appellant, v.
ROBERT J. POESCHL, INC., et al., Defendants and Respondents.

## COUNSEL

McGregor, Bullen & McKone and George W. Bullen for Plaintiff and Appellant.

Hardy, Erich & Brown and Russell G. Porter for Defendants and Respondents.

## OPINION

**FRIEDMAN, Acting P. J.**—Through this indemnification suit Ford Motor Company seeks to shift the cost of a personal injury settlement to the dealer and the leasing agency who placed an allegedly unsafe automobile in the hands of the customer.

Gist of Ford's complaint is that it sent to its dealers a notice requesting the recall of certain 1964 Thunderbird automobiles (designated by number) in order to have the rear brake light serviced; that, despite the recall notice, one of the listed Thunderbirds leased to a customer by defendants was involved in an accident allegedly caused by the very brake light defect described in the recall notice; that Ford paid $72,000 to settle litigation instituted by the injured parties against Ford, the dealer and the leasing agency; that the latter two parties refused to contribute to the settlement.

The trial court held that Ford's second amended complaint failed to state a claim for relief and sustained a general demurrer without leave to amend. Ford has appealed from the ensuing judgment.

The parties entered into no contract to indemnify. Ford's claim is thus hinged to the principle of implied indemnity, which permits one of two tortfeasors to shift the entire loss to the other when, without active fault on the claimant's part, he has been compelled by reason of some legal obligation to pay damages occasioned by the immediate fault of the other. As a rough rule of thumb, the decisions allowing indemnity speak of the "passive" fault of the claimant as compared with the "active" fault of the indemnitor. Standing alone, the passive-active fault criterion is too vague to serve as a decisional guide. The standard most frequently applied by the California appellate courts is one drawn from an opinion of the Pennsylvania Supreme Court in *Builders Supply Co.* v. *McCabe,* 366 Pa. 322, 325-326 [77 A.2d 368, 24 A.L.R.2d 319]: "The right of *indemnity* rests upon a difference between the primary and secondary liability of two persons each of whom is made responsible by the law to an injured party. . . . The difference between primary and secondary liability is not based on a difference in

*degrees* of negligence or on any doctrine of *comparative* negligence,—a doctrine which, indeed, is not recognized by the common law. . . . It depends on a difference in the *character* or *kind* of the wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person. . . . But the important point to be noted in all the cases is that secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible."[1]

Recognizing that any verbal formulation is vulnerable to subjective manipulation, a commentator has shrewdly observed that deterrence is the policy goal underlying most of the implied indemnity decisions. (Comment, *Allocations of Loss Among Joint Tortfeasors,* 41 So.Cal.L.Rev. 728, 744.) A similar measuring device is suggested by the last clear chance concept, drawn by analogy from another area of the law involving dual sources of fault. (See 2 Witkin, Summary of Cal. Law (1960) pp. 1542-1543.) The analogy has been noted by the American Law Institute's reporters for the Restatement of Restitution. Section 97 of the Restatement calls for indemnification of one tortfeasor by another, when the latter knew of the peril and could have averted it when the first actor was unable to do so.[2]

Wrongs other than negligence may create dual liability to the third

---

[1]The Pennsylvania formulation received its first California recognition in *Alisal Sanitary Dist.* v. *Kennedy,* 180 Cal.App.2d 69, 75 [4 Cal.Rptr. 379]. Later California decisions utilizing it are: *American Can Co.* v. *City & County of San Francisco,* 202 Cal.App.2d 520, 525 [21 Cal.Rptr. 33]; *Pierce* v. *Turner,* 205 Cal.App.2d 264, 267 [23 Cal.Rptr. 115]; *Cahill Bros., Inc.* v. *Clementina Co.,* 208 Cal.App.2d 367, 378-379 [25 Cal.Rptr. 301]; *Horn & Barker, Inc.* v. *Macco Corp.,* 228 Cal.App.2d 96, 112 [39 Cal.Rptr. 320]; *Progressive Trans. Co.* v. *Southern California Gas Co.,* 241 Cal.App.2d 738, 741 [51 Cal.Rptr. 116]; *Ralke Co.* v. *Esquire Bldg. Maintenance Co.,* 246 Cal.App.2d 141, 144 [54 Cal.Rptr. 556]; *Aerojet General Corp.* v. *D. Zelinsky & Sons,* 249 Cal.App.2d 604, 611 [57 Cal.Rptr. 701]; *Ferrel* v. *Vegetable Oil Products Co.,* 247 Cal.App.2d 117, 120-121 [55 Cal.Rptr. 589]; *Muth* v. *Urricelqui,* 251 Cal.App.2d 901, 909 [60 Cal.Rptr. 166]; *Cobb* v. *Southern Pac. Co.,* 251 Cal.App.2d 929, 932-933 [59 Cal.Rptr. 916]; *Atchison, T. & S. F. Ry. Co.* v. *Lan Franco,* 267 Cal.App.2d 881, 888 [73 Cal.Rptr. 660]. A verbal variant of the rule appears in *Goldman* v. *Ecco-Phoenix Elec. Corp.,* 62 Cal.2d 40, 44 [41 Cal.Rptr. 73, 396 P.2d 377].

[2]See Seavey and Scott, Notes on Restatement of Restitution (1937) section 97, page 162. Section 97 of the Restatement declares: "A person whose negligent conduct combined with the reckless or intentionally wrongful conduct of another has resulted in injury for which both have become liable in tort to a third person is entitled to indemnity from the other for expenditures properly made in the discharge of such liability, if the other knew of the peril and could have averted the harm at a time when the negligent tortfeasor could not have done so."

party and produce the claim of indemnity. In products liability cases such as this, a manufacturer's or retailer's strict liability in tort may form the springboard for the indemnity claim. (See *Dart Transportation Service* v. *Mack Trucks, Inc.*, 9 Cal.App.3d 837, 848 [88 Cal.Rptr. 670].) ■ An automobile manufacturer who produces a defective car and places it on the market is strictly liable in tort for resultant damages without proof of negligence; moreover, a manufacturer cannot escape liability by delegating to its dealers responsibility for inspections and corrections necessary to have its cars delivered to the ultimate customer free of dangerous defects. (*Vandermark* v. *Ford Motor Co.*, 61 Cal.2d 256, 261 [37 Cal.Rptr. 896, 391 P.2d 168].)

■ Before applying these standards to the case at hand, we take note of decisions holding that the issue whether the claimant's conduct precludes indemnity is a fact question for the jury and becomes one of law only when the result is clear and undisputable. (*Pearson Ford Co.* v. *Ford Motor Co.*, 273 Cal.App.2d 269, 275 [78 Cal.Rptr. 279]; *Ralke Co.* v. *Esquire Bldg. Maintenance Co., supra,* 246 Cal.App.2d at pp. 144-145.) Such pronouncements are made in the context of post-trial appeals which equip the reviewing court with an evidentiary record and a verdict or finding. Here the indemnity claim comes up on the plaintiff's pleading. The issue's character as one of fact is dubious in any event. (See *Aerojet General Corp.* v. *D. Zelinsky & Sons, supra,* 249 Cal.App.2d at p. 610; Weiner, *The Civil Jury Trial and the Law-Fact Distinction* (1966) 54 Cal.L.Rev. 1867.) The doubt is not troublesome here. Plaintiff has twice amended its complaint and is thus accountable for a crystallized statement of the facts. The fact situation being fixed, the task is to characterize it according to legal standards, essentially a law determination rather than a fact-finding problem.

■ Whether the vehicle was in the dealer's hands or whether it had reached the customer at the time of the recall notice, Ford cannot recover. Its complaint alleges that the dealer had local service facilities for correcting the brake light, while it did not. Ford's lack of local service facilities is not significant, for it had other practicable means of preventing injury. Ford makes no claim that it lacked ability to locate the vehicle or that it could not have had the defect repaired at its expense in the dealer's shop or elsewhere. Even if the vehicle had reached the customer's hands when the manufacturer discovered the defect, it could have plucked the flower of safety out of the nettle of danger by locating the owner and notifying him of the defect.[3]

---

[3]The National Traffic and Motor Vehicle Safety Act of 1966 (adopted after the events at bar) requires the manufacturer to send notice of motor vehicle defects

By notifying the dealer alone, Ford could not shift to the dealer the direct obligation of safety it owed the customer. (*Vandermark* v. *Ford Motor Co., supra.*) Ford's production of the defective car, coupled with its failure to attempt direct notice to the customer, breached a direct obligation it owed the latter. Ford had a "last clear chance" to avert injury and failed to use it. Its fault is primary, not secondary, and not imputed to it as a consequence of the dealer's or leasing agency's fault. Under the pleaded circumstances, the latter are not liable for indemnification of the manufacturer.

The dealer and the leasing agency shared Ford's ability to reach the customer before an accident occurred. The complaint does not disclose whether these firms were stirred by the recall notice. On the assumption that they did nothing, their escape from financial responsibility is troublesome. Judicially favored objectives of deterrence and accident prevention would be promoted by imposing some liability on a dealer who knew of danger and did nothing. To shift the entire loss to him would not serve these objectives, for then the manufacturer would escape scot-free. A wise rule of law—one designed to stimulate responsibility throughout the merchandising chain—would require both parties to share the loss. A rule of contribution or partial indemnification would permit that result. In California the common law rule against contribution among tortfeasors has been modified to the extent of permitting contribution only after a joint judgment against them. (Code Civ. Proc., §§ 875-879.) Under California law to date, indemnification is an all-or-nothing proposition. Thus the law leaves these parties where it finds them, denying any indemnity to the originator of the accident-producing factors.

Judgment affirmed.

Janes, J., and Pierce, J.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 26, 1972.

---

both to the dealer and to the purchaser (where the latter is known to the manufacturer) and to any subsequent purchaser to whom the vehicle warranty has been transferred. (15 U.S.C. § 1402.) Had this case reached review after trial, a wisely prepared trial record would have revealed whether Ford possessed or had access to the names and addresses of customers who had bought or leased new 1964 Thunderbirds on the recall list. Judicially noticed vehicle registration laws supply public records of the original and subsequent buyers of automobiles but not, apparently, of automobile lessees.

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.