[Civ. Nos. 30690, 30691, 30692. First Dist., Div. One. June 4, 1973.]

GENERAL ELECTRIC COMPANY et al.,
Cross-complainants and Appellants, v.
THE STATE OF CALIFORNIA ex rel. DEPARTMENT OF
PUBLIC WORKS et al., Cross-defendants and Respondents.

## COUNSEL

Sedgewick, Detert, Moran & Arnold, Ivan Weinberg, Stephen Jones and Cyril Viadro for Cross-complainants and Appellants.

Harry S. Fenton, John P. Horgan, Robert J. DeFea, Kenneth G. Nellis, David L. Schreck, Donald J. Sullivan, Fields, McBride, Gordon & Rees and P. Gerhardt Zacher for Cross-defendants and Respondents.

## OPINION

**ELKINGTON, J.**—According to the complaints of the three separate actions from which the instant appeals have arisen, an automobile driven by James Bailey in which his wife Sharon was a passenger was rear-ended by another vehicle. The Bailey car was thereby propelled across a center dividing "island" into oncoming traffic, causing a head-on collision with a vehicle driven by Wallace Moore. The vehicle which had first struck the Bailey automobile was being operated by John O'Connell in the course of his employment by General Electric Company; it was owned by General Electric Company and Lease Plan, Inc. James Bailey, his wife Sharon, and Wallace Moore commenced separate actions against these parties for injuries and damages resulting from the accident.

Thereafter John O'Connell, General Electric Company, and Lease Plan, Inc., filed cross-complaints in each action against the State of California

and the County of Alameda. In each it was alleged that the state and county cross-defendants had knowingly maintained the highway at the point of the accident "in a dangerous, defective and hazardous condition for people driving on that road in that there was no median divider, tension cable, dividing apparatus, or separation of any kind between northbound and southbound vehicles to prevent them from coming into contact and colliding should they in any way deviate or be compelled to deviate, from their intended course," thus knowingly creating "a reasonably foreseeable risk of injury to parties driving on said highway," all of which proximately contributed to the injuries of the plaintiff.

Prayed for in each cross-complaint was a judicial declaration "that cross-complainants, and each of them, are entitled to an implied right of indemnification, or right of indemnification by operation of law, or equitable right of indemnification against cross-defendants, and each of them, for any judgment rendered against cross-complainants, or any sums paid as a result of the complaint on file in this action."

The superior court sustained general demurrers without leave to amend to each of the cross-complaints. Cross-complainants have appealed from the resulting judgments of dismissal of their cross-actions.

We assume, arguendo, as apparently the parties did in the superior court, that the allegations of the cross-complaints would have stated causes of action against the state and county had they been incorporated in the plaintiff's complaint. We, ourselves, do not pass upon this question. Instead we proceed to consider only the theories which appear to have been raised in the court below.

In support of their contention that each of their cross-complaints stated a cause of action for relief, cross-complainants urge three theories which they entitle "Indemnity," "Contribution," and "Equitable Apportionment." Throughout their supportive arguments they insist that they occupy a superior equitable position to that of the state and county cross-defendants. From our view of the circumstances as pleaded in the cross-complaints we are unable to agree.

*Indemnity*

The argument here appears to be, not that cross-complainants should be indemnified against all liability arising out of the accident, but that "the public entities should be made to absorb that part of plaintiffs' damages" arising from the head-on collision. The theory is that of "equitable implied non-contractual indemnity."

This theory was extensively discussed in *Atchison, T. & S. F. Ry. Co. v. Lan Franco,* 267 Cal.App.2d 881, 886-887 [73 Cal.Rptr. 660]. There the court stated:

"The cases are not always helpful in determining whether equitable indemnity lies. The tests utilized in applying the doctrine are vague. Some authorities characterize the negligence of the indemnitor as 'active,' 'primary,' or 'positive,' and the negligence of the indemnitee as 'passive,' 'secondary,' or 'negative.' . . . Other authorities indicate that the application of the doctrine depends on whether the claimant's liability is 'primary,' 'secondary,' 'constructive,' or 'derivative.' . . . These formalizations have been criticized as being artificial and as lacking the objective criteria desirable for predictability in the law. . . .

"Notwithstanding the uncertainty generated by the foregoing terminology, two critical prerequisites are generally necessary for the invocation of noncontractual implied indemnity in California: (1) The damages which the claimant seeks to shift are imposed upon him as a result of some legal obligation to the injured party; and (2) it must appear that the claimant *did not actively nor affirmatively participate* in the wrong."

The foregoing rule that one seeking equitable indemnity from his joint tortfeasor must not have *actively* or *affirmatively* participated in the wrong, has been widely followed in California. (See *Standard Oil Co.* v. *Oil, Chemical etc. Internat. Union,* 23 Cal.App.3d 585, 590-591 [100 Cal. Rptr. 354]; *People* ex rel. *Dept. Pub. Wks.* v. *Daly City Scavenger Co.,* 19 Cal.App.3d 277, 281-282 [96 Cal.Rptr. 669]; *Sammer* v. *Ball,* 12 Cal. App.3d 607, 610 [91 Cal.Rptr. 121]; *Pearson Ford Co.* v. *Ford Motor Co.,* 273 Cal.App.2d 269, 272-273 [78 Cal.Rptr. 279]; *Ferrel* v. *Vegetable Oil Products Co.,* 247 Cal.App.2d 117, 120 [55 Cal.Rptr. 589].)

Applying this rule to the instant cases, it must be said that O'Connell's rear-ending of the Bailey car constituted *active* and *affirmative* participation in the wrong leading to each of the plaintiffs' injuries.

Other cases decline to follow too closely the "active and affirmative participation" test of *Atchison T. & S. F. Ry. Co.* v. *Lan Franco, supra,* 267 Cal.App.2d 881. They emphasize a "primary and secondary liability" test under which a party secondarily liable may have indemnity from a joint tortfeasor whose liability is primary. Discussing this rule, the court in *Ford Motor Co.* v. *Robert J. Poeschl, Inc.,* 21 Cal.App.3d 694, 696-697 [98 Cal.Rptr. 702], said:

"As a rough rule of thumb, the decisions allowing indemnity speak of the 'passive' fault of the claimant as compared with the 'active' fault of the indemnitor. Standing alone, the passive-active fault criterion is too vague to serve as a decisional guide. The standard most frequently applied by the California appellate courts is one drawn from an opinion of the Pennsylvania Supreme Court in *Builders Supply Co.* v. *McCabe,* 366 Pa. 322, 325-326 [77 A.2d 368, 24 A.L.R.2d 319]: 'The right of *indemnity* rests upon a difference between the primary and secondary liability of two persons each of whom is made responsible by the law to an injured party. . . . The difference between primary and secondary liability is not based on a difference in *degrees* of negligence or on any doctrine of *comparative* negligence,—a doctrine which, indeed, is not recognized by the common law. . . . It depends on a difference in the *character* or *kind* of the wrongs which cause the injury and in the nature of the legal obligation owed by each of the wrongdoers to the injured person. . . . But the important point to be noted in all the cases is that secondary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of the one primarily responsible.' " (To the same effect see *Muth* v. *Urricelqui,* 251 Cal.App.2d 901, 908-909 [60 Cal.Rptr. 166]; *Aerojet General Corp.* v. *D. Zelinsky & Sons,* 249 Cal.App.2d 604, 611 [57 Cal.Rptr. 701]; *Ralke Co.* v. *Esquire Bldg. Maintenance Co.,* 246 Cal.App.2d 141, 144 [54 Cal.Rptr. 556]; *Horn & Barker Inc.* v. *Macco Corp.,* 228 Cal.App.2d 96, 112 [39 Cal.Rptr. 320]; *Pierce* v. *Turner,* 205 Cal.App.2d 264, 267-268 [23 Cal.Rptr. 115]; *American Can Co.* v. *City & County of San Francisco,* 202 Cal.App.2d 520, 525 [21 Cal.Rptr. 33]; *Alisal Sanitary Dist.* v. *Kennedy,* 180 Cal.App.2d 69, 75 [4 Cal.Rptr. 379].)

It will be noted that even under this latter rule, "the important point to be noted in all the cases is that secondary as distinguished from primary liability rests upon a fault that is *imputed or constructive* only, . . ." (Italics added; *Ford Motor Co.* v. *Robert J. Poeschl, Inc., supra,* 21 Cal. App.3d 694, 697.) In the cases before us cross-complainants' liability to the several plaintiffs is patently neither constructive, nor imputed by or through any act of the state and county cross-defendants.

Cross-complainants place much reliance on *Herrero* v. *Atkinson,* 227 Cal.App.2d 69 [38 Cal.Rptr. 490, 8 A.L.R.3d 629]. In that case the pleadings indicated: that one Alice Lorenzo was injured in an automobile

accident as a proximate result of Herrero's negligence; that 18 months later an operation became necessary because of those injuries; and that in the operation doctors negligently administered a blood transfusion proximately causing the lady's death. Herrero thus became liable to her heirs for the death. (See *Ash* v. *Mortensen,* 24 Cal.2d 654, 657 [150 P.2d 876].) In an action brought by Lorenzo's administrator, Herrero sought indemnity from the medical tortfeasors for any judgment which might be entered against him. Reversing a contrary decision of the superior court, the appellate court held that under "such circumstances it is equitable and just that indemnity be allowed Herrero, and that the cross-defendant doctors and hospital bear that portion of the damages caused by their own negligent conduct." (P. 75.)

Cross-complainants here argue that, as in *Herrero,* there was a *first accident* for which they alone may be responsible, and a *second accident* (the head-on collision) for which not they, but instead the state and county cross-defendants due to the lack of a dividing barrier, were actively and primarily at fault.

We are unable to so view the incident here in question. The rear-ending of the Bailey car threw that vehicle into the path of the oncoming automobile of Wallace Moore. There was but one continuous chain of events proximately resulting from the active and primary negligence of cross-complainants' driver O'Connell. And that negligence may not reasonably be considered constructive or imputed.

We note that the *Herrero* court emphasized that Herrero "had no control or direction over the conduct of the [doctor] cross-defendants and not the slightest opportunity to protect himself against their negligence, . . ." (227 Cal.App.2d at p. 75.) Here it was obviously within the power of O'Connell to avoid rear-ending the Bailey car and thus to prevent the head-on collision.

■ Since cross-complainants' active and primary participation in the wrong leading to the plaintiffs' injuries indisputably appeared from their cross-complaints, causes of action for indemnity against the state and county were not stated.

We have also considered *United Air Lines, Inc.* v. *Wiener* (9th Cir. 1964) 335 F.2d 379. In that case concurring negligence of United Air Lines and the Air Force resulted in the destruction of two airplanes and the death of their occupants. The appellate court found the negligence of the United Air Lines to be slight and that of the Air Force, and hence the United

States, to be gross. The court stated (p. 402): "In view of the disparity of duties, the clear disparity of culpability, the likely operation of the last clear chance doctrine and all the surrounding circumstances, the findings that United and the government were *in pari delicto* are clearly erroneous and we hold that there is such difference in the contrasted character of fault as to warrant indemnity in favor of United [Air Lines and against the United States]."

The court in *United Air Lines, Inc.* v. *Wiener, supra,* was applying what it considered to be the law of the State of Nevada. So far as we are able to ascertain, the courts of California have never allowed indemnity to one joint tortfeasor simply because he was not *in pari delicto* with the other. ■ And of course, while decisions of lower federal courts are entitled to great respect they are not binding on state courts. (*People* v. *Estrada*, 234 Cal.App.2d 136, 145 [44 Cal.Rptr. 165, 11 A.L.R.3d 1307].) Insofar as *United Air Lines, Inc.* v. *Wiener* differs with the law of this state we find it to be inapplicable to the issue before us.

*Contribution*

The rule providing for contribution among joint tortfeasors is stated by Code of Civil Procedure section 875, subdivision (a), as follows: "Where a money judgment has been rendered jointly against two or more defendants in a tort action there shall be a right of contribution among them. . . ."

It has now been repeatedly held that the condition of this statute—a money judgment rendered jointly against two or more defendants—must exist before either may assert a right to contribution from the other. *American Can Co.* v. *City & County of San Francisco, supra,* 202 Cal. App.2d 520, 522-523, states: "Prior to 1957, when the Legislature enacted sections 875-880 of the Code of Civil Procedure, the normal common-law rule, although subject to certain exceptions, was that one joint tortfeasor could not seek contribution or indemnity from another. Pursuant to Code of Civil Procedure, section 875, a limited right to contribution became available 'Where a money judgment has been rendered jointly against two or more defendants in a tort action. . . .' Where this section is not applicable, however, the general common law prevails and the party seeking contribution must bring himself within one of the exceptions to the rule." (See also *River Garden Farms, Inc.* v. *Superior Court,* 26 Cal.App.3d 986, 999 [103 Cal.Rptr. 498]; *Ford Motor Co.* v. *Robert*

*J. Poeschl, Inc., supra,* 21 Cal.App.3d 694, 699; *Guy F. Atkinson Co. v. Consani,* 223 Cal.App.2d 342, 343-344, 346 [35 Cal.Rptr. 750]; *Thornton* v. *Luce,* 209 Cal.App.2d 542, 550 [26 Cal.Rptr. 393].)

■ It thus appears, the condition of the statute not having been met, that the cross-complaints stated no causes of action for contribution.

Cross-complainants' argument, that section 875 is consistent with their right to now bring the state and county cross-defendants into the action, with the right of contribution to be *perfected after judgment,* is also invalid. There is no such right in one joint tortfeasor to himself bring in the others. ■ It is the rule that: " 'Absent some special relationship between the parties, other than their potential liability as joint tortfeasors, a plaintiff should be able to control his case by proceeding against the party or parties whom he feels to be most clearly liable. Under such circumstances, an alleged wrongdoer should not be permitted to assert the right, even subject to the restrictions of sections 442 and 1048 of the Code of Civil Procedure, to bring in other persons whom he feels might in some fashion have contributed to the consequences of his own wrongful conduct where such right is based, not upon the theory that the presence of such other persons would defeat the plaintiff's claim, but only that it would lighten the wrongdoer's burden.' " (*Balding* v. *D. B. Stutsman, Inc.,* 246 Cal.App.2d 559, 562 [54 Cal.Rptr. 717]; *Thornton* v. *Luce, supra,* 209 Cal.App.2d 542, 551-552.)

### Equitable Apportionment

■ It is urged that plaintiffs' damages should be equitably apportioned between cross-complainants and cross-defendants according to their respective fault. The contention is not that there exists such an applicable rule but instead, that such a rule should now be adopted and applied by us.

We decline to do so. It would create but another species of contribution between joint tortfeasors, contrary to the dictates of Code of Civil Procedure section 875, and the related authority (cited *ante*) holding that the common law rule of no contribution must apply in cases not covered by the statute. Further, as indicated, we observe no equitable considerations here calling for the application of such a rule.

For the reasons stated the superior court properly sustained cross-com-

plainants' demurrers without leave to amend, and the judgments must be affirmed.

Each of the judgments is affirmed.

Sims, Acting P. J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied September 6, 1973.