[Civ. No. 28926.   Second Dist., Div. Three.   Dec. 9, 1966.]

ELMER L. FERREL, Plaintiff and Respondent, v. VEGETABLE OIL PRODUCTS COMPANY, INC., Defendant, Cross-complainant and Appellant; R. O. STEPHENS, Cross-defendant and Respondent.

Schell & Delamer, Lee A. Solomon and Abe Mutchnik for Defendant, Cross-complainant and Appellant.

Edgar Simon for Plaintiff and Respondent.

James V. Brewer for Cross-defendant and Respondent.

SHINN, P. J.—Vegetable Oil Products Company, Inc., appeals from a judgment awarding Elmer L. Ferrel damages for personal injuries sustained while working as an employe of R. O. Stephens, an independent contractor doing business as Bay View Welding Works, which judgment also denied the claim of Vegetable Oil to be indemnified by Bay View for the amount of any judgment that might be rendered against it in favor of Ferrel, resulting from the negligence of Bay View.

In 1957 Vegetable Oil was a processor of vegetable oils with a plant in Wilmington. R. O. Stephens, doing business as Bay View Welding Works was a worker in metals. Plaintiff Ferrel was an employe of Bay View. Fire and an explosion damaged one of Vegetable Oil's tanks; Vegetable Oil decided that the tank was reparable, sought bids, accepted the bid of Bay View and entered into a contract with Bay View for the repair work. The tank was 40 feet high and 40 feet in circumference; Safway Steel Scaffolds furnished a scaffold which Bay View erected inside the tank; the scaffold had levels upon which planks could be placed to make a platform. Ferrel was knocked from a platform while working on the job; he sued Safway and Vegetable Oil and received a verdict against Vegetable Oil for $275,000; Vegetable Oil moved for judgment notwithstanding the verdict and for a conditional new trial; both motions were granted and Ferrel appealed. The Supreme Court reversed the judgment and affirmed the order granting a new trial. The ground of the reversal was that upon the facts proved Vegetable Oil could have been found guilty of negligence which contributed to Ferrel's accident. Before the case went to retrial Vegetable Oil filed a cross-complaint against Bay View alleging that the accident to Ferrel was caused by Bay View's negligence and seeking to have established a right to be indemnified by Bay View for the amount of any judgment that might be rendered against it in Ferrel's suit. Bay View answered, denying that it had been negligent and alleging that its insurance carrier had paid to Ferrel in workmen's compensation (found to be $80,616.15) $80,016.46 for which amount it claimed a lien upon any judgment that might be rendered against Vegetable Oil in favor of Ferrel. It was also alleged that Vegetable Oil had been guilty of active negligence which contributed to Ferrel's injury and for that reason should be denied the right to indemnification.

Upon a retrial verdict and judgment were rendered against Vegetable Oil upon Ferrel's complaint in the sum of $500,000 and in favor of Bay View on the cross-complaint. Upon the motion of Vegetable Oil for judgment n.o.v. or for a new trial the judgment was reduced to $425,000.

By letter and at the time of the oral argument the court was informed by counsel for Vegetable Oil that after the appeal was taken Ferrel's judgment had been compromised and settled by Vegetable Oil. Bay View expresses neither agreement nor disagreement with this statetment. It was quite proper for the court to be so informed. We therefore proceed upon the assumed fact that the judgment has been satisfied. This being the fact the only remaining question is whether Vegetable Oil was entitled to be indemnified by Bay View. Satisfaction of the judgment removes the question on the appeal whether the liability of Vegetable Oil to Ferrel has been reduced by the amount of workmen's compensation, amounting to $80,616.15, paid to Ferrel by Bay View.

■ Under applicable California decisions Vegetable Oil has a right to be indemnified by Bay View unless Vegetable Oil, itself, was guilty of active negligence which contributed to the injury to Ferrel, or of any breach of duty toward Bay View.

■ The basis of Vegetable Oil's right to be indemnified was the duty of Bay View to conduct its operations in a careful and prudent manner and the breach of that duty, from which a right to indemnification is implied. (*Weyerhaeuser S.S. Co.* v. *Nacirema etc. Co.*, 355 U.S. 563 [2 L.Ed.2d 491, 78 S.Ct. 438]; *Ryan etc. Co.* v *Pan-Atlantic S.S. Corp.*, 350 U.S. 124 [100 L.Ed. 133, 76 S.Ct. 232]; *San Francisco Unified School Dist.* v. *California Bldg. etc. Co.*, 162 Cal.App.2d 434 [328 P.2d 785]; *De La Forest* v. *Yandle*, 171 Cal.App.2d 59 [340 P.2d 52]; *Alisal Sanitary Dist.* v. *Kennedy*, 180 Cal.App. 2d 69 [4 Cal.Rptr. 379]; *Montgomery Ward & Co.* v. *KPIX Westinghouse Broadcasting Co.*, 198 Cal.App.2d 759 [18 Cal. Rptr. 341].)

■ It is well settled that where the right to indemnification otherwise exists it can be defeated by the active negligence of the indemnitee as distinguished from passive negligence, and the jury was so instructed.

■ It was stated in *Builders Supply Co.* v. *McCabe*, 366 Pa. 322, 325 [77 A.2d 368, 24 A.L.R.2d 319], that the right of one secondarily liable to indemnification from one primarily liable for damages "enures to a person who, without active

fault on his part, has been compelled by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he is only secondarily liable.'' This principle was expressly approved and applied in *American Can Co.* v. *City & County of San Francisco,* 202 Cal.App.2d 520 [21 Cal.Rptr. 33] ; *Alisal Sanitary Dist.* v. *Kennedy, supra* and *Cahill Bros. Inc.* v. *Clementina Co.,* 208 Cal.App.2d 367 [25 Cal.Rptr. 301].

The court instructed: ''In this action a cross-complaint has been filed, wherein Vegetable Oil Products Company is named cross-complainant and R. O. Stephens, dba Bay View Welding Works is named cross-defendant. As to the issues tendered by the cross-complaint and the answer to it, the parties therein named stand in the same relation one to another as do a plaintiff and a defendant under a complaint. Therefore, as the instructions given you apply to the plaintiff and defendant under the complaint, so they apply with like effect to the cross-complainant and cross-defendant, respectively, in their capacities as such, under the cross-complaint. ¶ Under the cross-complaint, the cross-complainant has the burden of proving the following issues: ¶ (1) That cross-defendant agreed to do the repair work on the copra tank in a safe and careful manner. (2) That cross-defendant breached said agreement by not doing the repair work in a safe or careful manner, resulting in injury to plaintiff. (3) The amount of damages which cross-complainant has suffered as a result of cross-defendant's breach of said agreement. ¶ And cross-defendant has the burden of proving the following issues: ¶ (1) That cross-complainant was guilty of active negligence. (2) That said negligence helped to bring about plaintiff's injury.'' The portion of the instruction stating the burden of proof resting upon the respective parties was added of the court's own motion.

The court also instructed as follows: ''The evidence in this case establishes that prior to the time of the accident, R. O. Stephens, doing business as Bay View Welding Works, was an independent contractor and had taken complete control of the tank where the accident occurred, and that defendant Vegetable Oil Products Company, the owner thereof, did not participate in the work being done, and retained no control of the tank (except to the extent of determining whether the work was completed according to the contract).'' The instruction correctly states the substance of the evidence.

There was no evidence that Vegetable Oil was negligent in

the selection of a contractor to do the work. R. O. Stephens with his father Hez Stephens, Sr., also named as a defendant, conducted the business under the name of Bay View Welding Works. The father was an experienced welder, boilermaker and pipefitter. He had previously worked for Vegetable Oil for 17 years. R. O. Stephens had worked on buckled steel plates while he was in the Navy and upon vessels in the shipyards, and had used the same kind of jack and equipment in the process. The tank had been damaged by fire on two previous occasions and repairs had been made from outside the tank. Bay View, however, decided to operate from within the tank and erected a scaffold within the tank from which the work could be carried on. The sides of the tank were constructed of sections called steel courses which were buckled inward and creased by fire and an explosion. Bay View used a device consisting of a pipe, one end of which would be placed against the side of the tank opposite the course to be forced back; at the other end was a hydraulic jack which could be manipulated by use of a 5-foot steel bar to force the buckled course outward as the jack was extended. The device was suspended from a boom and could be raised or lowered. While Ferrel was operting the equipment one of the courses apparently sprang back as the jack was retracted, causing the bar to strike Ferrel and knock him off the platform.

The repair work was under the exclusive control of Bay View. Vegetable Oil took no part in it except to observe how the work was progressing. Boyden McElroy, a vice president of Vegetable Oil, awarded the contract to Bay View; he had no engineering background; he did not discuss with R. O. Stephens the soundness of the metal or the repairability of the tank; he did not get an engineering plan for the work and he knew Bay View did not have an engineer on its staff; he observed the work each day as it progressed. Charles Blakeslee, a chemical engineer for Vegetable Oil, recommended repair of the tank but neither he nor any officer or employe of Vegetable Oil took any precautions to guard against accident.

Bay View claims that appellant knew or should have known the risks involved in repairing the tank and should have taken precautions by suitable provisions in the contract or by some other means. It is also said that appellant should have hired an engineer to advise of the dangers; it should have inquired how the contractor proposed to do the work; when it discovered the work was unusually dangerous it should have asked Bay View to reform the contract. It is said that Mr.

McElroy should have known that the work was being done in a manner that was extremely dangerous; appellant failed to give adequate warning to its invitees or protect them by controlling the conduct of persons on the premises. These are the particular omissions of Vegetable Oil which Bay View characterizes as active negligence.

Upon the undisputed facts we do not see how appellant could be held guilty of active negligence or any breach of duty toward Bay View. The court correctly stated, ''Vegetable Oil Company, the owner thereof, did not participate in the work being done, and retained no control of the tank (except to the extent of determining whether the work was completed according to the contract).''

Appellant had nothing whatever to do with the selection of the methods to be used in repairing the tank, was not consulted about the work at it progressed, gave no directions, made no suggestions, but simply looked on and said nothing and did nothing but observe how the work was progressing.

It could be inferred that the jury deemed this inaction active negligence. This was a difficult question for the jury to answer without further assistance by the court. As the distinction between active or passive negligence has been pointed out by the courts in particular and similar circumstances the court below could properly have instructed that Vegetable Oil was not proved to have been guilty of active negligence.

In *Harvey Machine Co.* v. *Hatzel & Buehler, Inc.*, 54 Cal.2d 445 [6 Cal.Rptr. 284, 353 P.2d 924], the named defendants, with others, contracted to construct a building on Harvey's property; one Mann, an employe of the defendants fell into an open pit which was part of the overall construction; Mann sued Harvey for damages; Harvey brought suit against defendants and Harvey's insurer to establish his right to be defended in the suit and to be indemnified for any judgment Mann might recover. After holding that the policy issued to Harvey covered the threatened liability to Mann the court assumed that Mann's injury was a consequence of some breach of duty owed to Mann on the part of Harvey, and said at page 448, ''Most significantly of all, the claimed breach of duty on the indemnitee's part was not active, affirmative misconduct, but at most passive negligence—a failure to act in fulfillment of a duty of care which devolved upon the indemnitee as the owner or occupier of land.''

*Safeway Stores, Inc.* v. *Massachusetts Bonding & Ins. Co.*, 202 Cal.App.2d 99 [20 Cal.Rptr. 820], was an action for

124

indemnity for amounts paid to several workmen of King, an independent contractor, for injuries sustained in the collapse of certain defective trusses installed by him. The trusses had been supplied by Timber Structures, Inc. Both King's job superintendent and Safeway's representative on the job saw that the truss material was of inferior quality and complained to the foreman of Timbers, but upon receiving a guarantee from Timbers, Safeway permitted the trusses to be installed. The construction contract gave Safeway the right to require the removal of all material condemned by the owner or its supervisor. The court held that the guarantee did not relieve King of the duty to use materials of the best quality and to use adequate safeguards against accident. King's superintendent testified that Safeway's representative saw the trusses being installed and objected to their being used. The court said at page 111: "Even if we were to assume, *arguendo*, that Safeway was negligent in not compelling the trusses to be rejected, our above holding would remain unchanged. The only negligence which could be thus posited of Safeway was merely *passive* in nature and not *active* or *affirmative*. It is too obvious to require detailed exposition that Safeway was not actively engaged in the construction of the building. Since the trial court found that King had caused the installation of the trusses, no tenable argument can be made that Safeway did. Safeway did not order King not to put up the trusses. It had nothing to do with obtaining the trusses in the first place. Upon receiving the letter of guarantee from Timber Structures, it merely declined to exercise a general supervisory right to order their removal. Safeway's position became one of *nonaction*." And again it was said at page 113, "The negligence of the indemnitee (which we assume, *arguendo*) is not active or affirmative but at the most passive."

■ Although, as held on the former appeal, the inaction of appellant could be found actionable negligence as to Ferrel, this was no basis for a finding that appellant was guilty of active negligence or of any breach of duty toward Bay View.

Vegetable Oil did not undertake by contract to assume a duty toward Bay View to assist in the work or to supervise it. It was merely an owner who made an agreement with an independent contractor to do work on its property.

Furthermore, Vegetable Oil was not the employer of Ferrel within the meaning of the safety provisions of the Labor Code. (*See Kuntz* v. *Del E. Webb Constr. Co.*, 57 Cal.2d 100, 106-107 [18 Cal.Rptr. 527, 368 P.2d 127]; *Woolen* v.

*Aerojet General Corp.*, 57 Cal.2d 407, 412-413 [20 Cal.Rptr. 12, 369 P.2d 708]), and there was no active participation by it in the conduct of Bay View which caused Ferrel's injury. (Cf. *King* v. *Timber Structures Inc.*, 240 Cal.App.2d 178, 180-182 [49 Cal.Rptr. 414].) Without such conduct on the part of Bay View, Vegetable Oil's knowledge of and acquiescence in such conduct would not have resulted in any injury to Ferrel. Therefore, it was Bay View's conduct, rather than that of Vegetable Oil, which was the primary and active cause of Ferrel's injury; and accordingly that is where the liability for the damages resulting from such injury should be transferred. (See *San Francisco Unified School Dist.* v. *California Bldg. etc. Co., supra,* 162 Cal.App.2d 434, 445 [328 P.2d 785].)

The judgment is reversed for a retrial of the issues raised by the cross-complaint and answer thereto. The appeal from the denial of the motion for judgment n.o.v. is dismissed.

Ford, J., concurred.

A petition for a rehearing was denied January 6, 1967, and the opinion and judgment were modified to read as printed above. The petition of the cross-defendant and respondent for a hearing by the Supreme Court was denied February 7, 1967.