[Civ. No. 32014.   Second Dist., Div One.   Apr. 29, 1968.]

P. J. O'MELIA et al., Plaintiffs and Appellants, v. CALI-
FORNIA PRODUCTION SERVICE, INC., Defendant
and Respondent.

Booth, Mitchel, Strange & Willian, Booth, Mitchel & Willian, George C. Mitchel and Kenneth J. Purcell for Plaintiffs and Appellants.

Henry E. Kappler for Defendant and Respondent.

LILLIE, J.—Defendant, an independent oil field repair contractor, was employed by plaintiffs to repair an oil well belonging to the latter and known as "Childs No. 1." While so engaged, an accident occurred which resulted in injury to one Farmer, an employee of defendant. A subsequent suit by Farmer against plaintiffs having been eventually settled for $50,000, the present action by plaintiffs sought indemnification from defendant of the sum above paid as well as costs and attorney's fees expended in connection with that litigation. Trial was to a jury which found for defendant. The appeal is from the judgment entered on such verdict.

The specific repairs contracted for, which were perhaps more in the nature of maintenance work, required that the rods and tubing connected with the pumping unit be pulled from the ground. In the case of this particular well, the pumping unit consisted of a vertical post, known in the industry as a Sampson Post, and a horizontal rocking beam resting thereon called the walking beam. One end of this horizontal beam, familiarly referred to as the horse's head, is located directly above the well and connected to the rod and tubing in the well; the opposite end of this same beam is connected to two arms, called the Pitman arms, which are connected in turn to two counterweights rotated by a power unit. The result causes a teeter-totter motion by the walking beam.

Although such is not always the case, the horse's head here involved was rigid and non-movable; hence the entire walking beam had to be moved vertically backward on the Sampson Post in the direction of the Pitman arms in order to disengage the bearing. This lifting movement was accomplished by running a line from a power winch on one of the defendant's trucks through a block atop a gin pole located nearby, some 60 feet in height, and connecting to a point on the horse's head; once the beam was lifted, it was intended that it then be

moved horizontally and rested on a saddle until the repairs were completed. Defendant's foreman, one Sanders, supervised the movement of the walking beam into its proposed saddle; he directed three employees of defendant, including Farmer, to stand behind the walking beam and pull on the rope as the beam was raised. The three men tugged on the rope, but the beam did not come to rest on the saddle. Instead it continued backward, and its end eventually fell to the ground. Farmer sustained injuries to his leg when either the Pitman arms or the counter-weights struck the fence on which he was standing.

There seems to be no dispute but that the accident happened because of the absence of certain safety latches which could have been hooked or fastened to pins on the walking beam had such pins then been available. In that event, the movement of the beam would have been restricted to the length of the latch (approximately 15 inches)—certainly it would not have fallen (as it did) off the Sampson Post. Although disputed by plaintiffs, there was evidence that the absence of safety latches was called to Mr. O'Melia's attention by Sanders, defendant's foreman; that O'Melia then stated "If we don't have them, we got to get the job done somehow"; that O'Melia further stated he did not care how the job was done provided the well was fixed. There was also evidence, likewise disputed, that O'Melia himself helped pull on the rope by which the walking beam was being retracted.

Plaintiffs' claim to indemnification is predicated on the doctrine of implied indemnity; thereunder the right of recovery " 'enures to a person who, without active fault on his part, has been compelled by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he is only secondarily liable.' " (*Ferrel* v. *Vegetable Oil Products Co.*, 247 Cal.App.2d 117, 120-121 [55 Cal.Rptr. 589].) Accordingly, as stated in *Ferrel*, "It is well settled that where the right to indemnification otherwise exists it can be defeated by the active negligence of the indemnitee as distinguished from passive negligence. . . ." (P. 120.) Since it is implicit in the jury's verdict that plaintiffs were guilty of "active negligence" as affirmatively pleaded by defendant, the first issue on this appeal is whether the evidence warranted such a finding. The two remaining assignments of error relate to the instructions: three of such instructions concerned active negligence and are challenged as

erroneous; likewise challenged are further instructions that plaintiffs were employers within the meaning of the Labor Code, that they were required in such capacity to observe certain petroleum safety orders and were presumptively negligent if such orders were violated.

In cases of this kind, ''Whether the negligence is active or passive in nature is generally a question of fact for jury determination [citation].'' (*Baldwin Contracting Co.* v. *Winston Steel Works, Inc.,* 236 Cal.App.2d 565, 572-573 [46 Cal.Rptr. 421].) The citation above is that of *Cahill Bros., Inc.* v. *Clementina Co.,* 208 Cal.App.2d 367 [25 Cal.Rptr. 301], where the court (after reference to pertinent cases) also declared: ''The thrust of these cases is that if the person seeking indemnity personally participates in an affirmative act of negligence, or is physically connected with an act or omission by knowledge or acquiescence in it on his part, or fails to perform some duty in connection with the omission which he may have undertaken by virtue of his agreement, he is deprived of the right of indemnity. In other words, the person seeking indemnity cannot recover if his negligence is active or affirmative as distinguished from negligence which is passive.'' (P. 382.) ▮▮▮ Viewing the evidence (as we necessarily must) in a light most favorable to defendant, we think that the implied finding of active negligence on O'Melia's part is substantially supported; more specifically, that plaintiffs' conduct at the very least ''helped to bring about the damage'' complained of (*San Francisco Unified School Dist.* v. *California Bldg. etc. Co.,* 162 Cal.App.2d 434, 449 [328 P.2d 785]) being a standard set in that case to guide the trier of fact in litigation akin to that at bar.

At the time of the accident, Mr. O'Melia had been in the oil well production business for some 25 years during which period he became experienced with the type of unit here involved which he purchased second-hand three or four months prior to the instant happening. The subject unit either came without safety latches, or they could not be found when their absence was called to his attention by defendant's foreman; too, the pin to fasten the safety latch was missing on one side of the walking beam, thus further compounding the problem. Although he admittedly knew of the existence of petroleum safety orders, and although he also had knowledge of the proper procedure for ''pulling a well'' of the type here in suit, he nevertheless told defendant's foreman that he did

not care how the job was done as long as it was accomplished as soon as possible. Too, he remained within a few feet of defendant's operations, saw what was being done and, according to the evidence, assisted defendant's crew in pulling on the rope used to retract the beam. True, the evidence is conflicting as to O'Melia's participation in the rope-pulling incident, but it was for the jury to resolve such conflict notwithstanding plaintiffs' insistence that the conflict must be of a substantial character, citing *Herbert* v. *Lankershim,* 9 Cal.2d 409 [71 P.2d 220], which case (as to that point) ''has been 'frequently relied upon [by litigants] but seldom followed [by the courts].' '' (*Roeder* v. *Roeder,* 118 Cal.App.2d 572, 582 [258 P.2d 581].) Finally, it should be borne in mind that defendant was not employed to repair the walking beam by installing safety latches or replacing the broken pin; its job was to put the well back in production. While plaintiffs continue to contend that defendant's undertaking was one to discharge such employment in a safe and careful manner, they failed to provide a safe place for the performance of such duties and expressly directed the initiation of activities that culminated in the accident. ■■■ As in the *Baldwin Contracting Co.* case, *supra* (236 Cal.App.2d 565), two separate parties have acted in such a way as to cause injury to a third party; hence, it was for the jury to determine whether plaintiffs helped to bring about such injury. ''The crux of the inquiry is participation in some manner by the person seeking indemnity in the conduct or omission which caused the injury beyond the mere failure to perform the duty imposed upon him by law.'' (*Cahill Bros., Inc.* v. *Clementina Co., supra,* 208 Cal.App.2d 367, 381.) ■■■ The evidence above summarized points to participation by O'Melia beyond the limit of mere inaction. It was for the jury to decide whether in directing the job to proceed, despite the hazards foreseeable by him, plaintiff O'Melia partook actively and consciously in the wrong to Farmer.

Several cases are cited by plaintiffs in support of the claim that their acts, if negligent, were only passively so. As so frequently happens, such cases are either distinguishable on their facts or stand for certain propositions contrary to those contended for by the party relying thereon. Earlier it was pointed out that the determination whether an indemnitee has been actively negligent is generally one of fact for the trier thereof; at least two of plaintiffs' cases stand for the above

principle (*Safeway Stores, Inc.* v. *Massachussets Bonding & Ins. Co.*, 202 Cal.App.2d 99 [20 Cal.Rptr. 820]; *San Francisco Unified School Dist.* v. *California Bldg. etc. Co., supra,* 162 Cal.App.2d 434). Much is made of two cases, one of which holds that the indemnitee's negligence was passive as a matter of law (*Ferrel* v. *Vegetable Oil Products Co.,* 247 Cal. App.2d 117 [55 Cal.Rptr. 589]);[1] the other (*Aerojet General Corp.* v. *D. Zelinsky & Sons,* 249 Cal.App.2d 604 [57 Cal. Rptr. 701]) sustains conclusions of law from the findings of fact there found. The *Ferrel* facts are clearly different from those at bar. Unlike O'Melia, the engineer in *Ferrel* was not shown to have been familiar with certain safety orders, nor did he give any orders or directions; too, the engineer in *Ferrel* had no knowledge of any defect in the scaffold from which the employee was knocked, nor was he able to make the visual observations at close range that were made by O'Melia; also, O'Melia had had a long experience in the operation of the subject rig, whereas the engineer in *Ferrel* had no such specialized knowledge of the specific methods or procedures there necessary. There are still other factual distinctions between the two cases which render the holding in *Ferrel* inapplicable here. As for *Aerojet,* it also appears that the blowers and explosion-proof electrical equipment which caused the accident were supplied by the independent contractor; in our case, however, defendant was not required to furnish safety latches. Nor was there any showing that a responsible official of Aerojet was present during the subject operations or had any occasion to observe their execution—in the present case, as repeatedly heretofore noted, the situation was otherwise. In summary, therefore, there is nothing of any persuasive force in the whole collection of cases, pro and con, which compels a deviation from the general rule that the question of active versus passive negligence is a question of fact determinable from the particular circumstances found to exist.

■ The remaining assignments of error deal with certain of the instructions. The first (requested by defendant) defined active negligence as follows: "Active negligence is the negligent conduct of active operations. It is conduct which may consist either of affirmative participation in an act or omission negligent in character. It is to be distinguished from passive

---

[1]As to this phase of the appeal, however, no mention is made by plaintiffs of the *Cahill Bros.* case (*supra,* 208 Cal.App.2d 367) determining the indemnitee's negligence to be active as a matter of law.

negligence which is the omission or failure to perform a legal duty but not involving any affirmative act or active operation. Negligence is active not only if such person participates in another's affirmative act of negligence, but also if such person is physically connected with the negligent act of another by knowledge or acquiescence on his part." Only the closing sentence is objected to; accordingly, it must be decided whether, when considered with the balance of the instruction, the matters therein set forth are prejudicially erroneous. By such instruction, plaintiffs contend, the jury was permitted to find that they were guilty of active negligence from mere knowledge of or acquiescence in the active negligence of defendant; such is assertedly not the law since active negligence must be predicated upon actual participation in such negligent act. As pointed out by plaintiffs, "One is actively negligent if he participates in some manner in the conduct or omission which caused the injury." (*King* v. *Timber Structures, Inc.*, 240 Cal.App.2d 178, 182 [49 Cal.Rptr. 414].) Since no objection is made by plaintiffs to an earlier sentence declaring that active negligence may consist "either of affirmative participation in an act or an omission negligent in character," their present criticism reminds us of the observation that "Semantic analysis of a single line, sentence or instruction without regard to the whole charge can only result in misleading distortion." (*Johnston* v. *Brother*, 190 Cal. App.2d 464, 470 [12 Cal.Rptr. 23].) The claim is further without merit in view of the fact that Mr. O'Melia did actually participate in defendant's omission by directing the work to proceed without the safety latches. A second instruction stated that plaintiffs' right to indemnity would not be lost by mere inaction unless O'Melia "knew or as a reasonably prudent person should have foreseen that if the walking beam were retracted without the safety latches or some other safety device someone might be injured as a result thereof." Again, mention must be made that O'Melia was connected with the event physically, not only by omission but by active direction; hence, the instruction cannot be characterized as erroneous. Finally, a third instruction is said to be deficient because it failed to include the necessary element that plaintiffs must have participated in the act causing the injury. What has heretofore been said with respect to O'Melia's direction to proceed with the job disposes of this last claim.

■ At defendant's request the jury was also instructed

that plaintiffs were employers within the meaning of the Labor Code, sections 6400-6401, requiring that their employees be furnished a safe place of employment, including the use of safety devices and safeguards. Another instruction told the jury that plaintiffs were also employers within the meaning of certain Petroleum Safety Orders of the Division of Industrial Safety (the text of which was read) and had a duty to comply therewith; still another instruction stated that the violation of any such statute or safety order was presumptively negligence. There was no error, as urged by plaintiffs, in the giving of such instructions. ██ It is settled law that where an owner of real property contracts to have work done on his property, such property becomes a place "where employment is carried on" and thus a place of employment under that definition of the term in section 6302, Labor Code; since he has custody and control of his own property, the owner also has custody and control of a "place of employment" and hence is an "employer" within the definition of section 6304 of the same code. (*Williams* v. *Pacific Gas & Elec. Co.*, 181 Cal.App.2d 691, 708 [5 Cal.Rptr. 585].) Furthermore, it is likewise settled "that as to unsafe conditions of employment which exist in the place of employment at the time that it is turned over by the owner to an independent contractor the owner is an 'employer' within the meaning of Labor Code, section 6304." (*Johnson* v. *A. Schilling & Co.*, 170 Cal.App.2d 318, 324 [339 P.2d 139].) As such, he becomes obligated under the provisions of sections 6400 and 6401 to provide a safe place of employment and to use safety devices. (*Maia* v. *Security Lbr. & Concrete Co.*, 160 Cal.App.2d 16, 20 [324 P.2d 657].) The above rules, controlling here, were reiterated in *Gaw* v. *McKanna*, 228 Cal.App.2d 348 [39 Cal.Rptr. 428], where cases relied on by the plaintiffs in this proceeding (e.g., *Kuntz* v. *Del E. Webb Constr. Co.*, 57 Cal.2d 100 [18 Cal.Rptr. 527, 368 P.2d 127], and *Wollen* v. *Aerojet General Corp.*, 57 Cal.2d 407 [20 Cal.Rptr. 12, 369 P.2d 708]) are likewise distinguished.

The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied May 27, 1968, and appellants' petition for a hearing by the Supreme Court was denied June 26, 1968.