[Civ. No. 8874.   Fourth Dist., Div. One.   May 22, 1969.]

PEARSON FORD COMPANY, Cross-complainant and Respondent, v. FORD MOTOR COMPANY, Cross-defendant and Appellant.

Luce, Forward, Hamilton & Scripps and Robert G. Steiner for Cross-defendant and Appellant.

Holt, Macomber & Rhoades, Holt, Rhoades & Hollywood and Harrison R. Hollywood for Cross-complainant and Respondent.

AULT, J. pro tem.*—Cross-defendant Ford Motor Company (Ford) appeals from a judgment requiring it to indemnify cross-complainant Pearson Ford Company (Pearson) for the entire judgment ($150,000) rendered in favor of plaintiffs Tessie G. Schultz and Leroy N. Schultz, and against both Ford and Pearson after a jury trial of the main action. Plaintiffs recovered in the main action for personal injuries sustained by Mrs. Schultz in a single car accident caused by a defect in the brake system of an automobile manufactured by Ford and sold to the plaintiffs by Pearson, an authorized Ford dealer. Although plaintiffs had originally pleaded additional theories of liability, the case went to the jury solely on the theory of a manufacturer and retailer's strict liability in tort for defective manufacture or design as established in California in *Vandermark* v. *Ford Motor Co.*, 61 Cal.2d 256 [37 Cal.Rptr. 896, 391 P.2d 168].

The brake defect and its causal relationship to the accident resulting in Mrs. Schultz's severe injuries were amply demonstrated at the trial, and neither Ford nor Pearson has appealed from the judgment in plaintiffs' favor. The sole question presented is whether, under the facts and circumstances of this case, the judgment on the cross-complaint which requires Ford to pay the entire judgment recovered by plaintiffs should be permitted to stand.

■ Where, as here, two persons are held legally responsible in tort for the injury or damage to another, the question frequently arises as to how the loss is to be apportioned between the two responsible parties. If the rule of contribution obtains, the loss is distributed equally between them. (Code Civ. Proc., §§ 875, 876;[1] *Herrero* v. *Atkinson*, 227

*Assigned by the Chairman of the Judicial Council.

[1] "875. (a) Where a money judgment has been rendered jointly, against two or more defendants in a tort action there shall be a right of contribution among them as hereinafter provided.

"(b) Such right of contribution shall be administered in accordance with the principles of equity.

". . . . . . . . . .

"(f) This title shall not impair any right of indemnity under existing law, and where one tortfeasor judgment debtor is entitled to indemnity from another there shall be no right of contribution between them.

"§ 876. (a) The pro rata share of each tortfeasor judgment debtor shall be determined by dividing the entire judgment equally among all of them.

"(b) Where one or more persons are held liable solely for the tort of one of them or of another, as in the case of the liability of a master for the tort of his servant, they shall contribute a single pro rata share, as to which there may be indemnity between them.''

Cal.App.2d 69, 73 [38 Cal.Rptr. 490, 8 A.L.R.3d 629]; *Atchison, T. & S. F. Ry. Co. v. Lan Franco,* 267 Cal.App.2d 881, 884-885 [73 Cal. Rptr. 660].) If, however, one of the responsible parties is entitled to indemnity, he may shift or transfer the entire loss to the other who in equity and justice should bear it. (*Cahill Bros., Inc. v. Clementina Co.,* 208 Cal.App. 2d 367, 376 [25 Cal.Rptr. 301]; *Herrero v. Atkinson, supra,* 227 Cal.App.2d 69, 73.) ■ The right to implied indemnity may arise from contract or from equitable considerations. (*City & County of San Francisco v. Ho Sing,* 51 Cal.2d 127, 130 [330 P.2d 802]; *Cahill Bros., Inc., supra,* at p. 376.) It is not available where the responsible parties are *in pari delicto,* and the fault of each is equal in grade and similar in character (*Herrero v. Atkinson, supra,* at p. 74; *Atchison, T. & S. F. Ry. Co. v. Lan Franco,* 267 Cal.App.2d 881, 886 [73 Cal.Rptr. 660]). ■ "Generally indemnity becomes a consideration when one person is exposed to liability because of what another person did. 'The duty to indemnify may arise, and indemnity may be allowed in those fact situations where in equity and good conscience the burden of the judgment should be shifted from the shoulders of the person seeking indemnity to the one from whom indemnity is sought. The right depends upon the principle that everyone is responsible for the consequences of his own wrong, and if others have been compelled to pay damages which ought to have been paid by the wrongdoer, they may recover from him. Thus the determination of whether or not indemnity should be allowed must of necessity depend upon the facts of each case.' " (*Atchison, T. & S. F. Ry. Co.,* at page 885, citing from *Herrero, supra,* at page 74.) ■ The right to indemnity inures to a person who, without active fault on his part, is compelled by reason of legal obligation or relationship to pay damages which have been caused by the acts of another. (*Ferrel v. Vegetable Oil Products Co.,* 247 Cal.App.2d 117, 120 [55 Cal.Rptr. 589]; *O'Melia v. California Production Service, Inc.,* 261 Cal.App. 2d 618, 621 [68 Cal.Rptr. 125].) Attempts to classify the conduct of the indemnitor as "active," "primary," or "positive" and to characterize the conduct of the indemnitee as "passive," "secondary," or "negative" have not been too successful, and such classifications do not satisfactorily cover all cases. (*Atchison, T. & S. F. Ry. Co. v. Lan Franco, supra,* 267 Cal.App.2d 881, 886; *Herrero v. Atkinson, supra,* 227 Cal.App.2d 69, 74.) ■ In spite of the vagueness of the tests to be applied, ". ... two critical prerequisites are gen-

erally necessary for the invocation of noncontractual implied indemnity in California.: (1) The damages which the claimant seeks to shift are imposed upon him as a result of some legal obligation to the injured party; and (2) it must appear that the plaintiff *did not actively nor affirmatively participate* in the wrong.'' (*Atchison, T. & S. F. Ry. Co.* v. *Lan Franco, supra,* 267 Cal.App.2d 881, 886.)

With these general principles in mind we turn to the facts of this case.

THE BRAKE DEFECT.

The brakes of the Ford automobile involved are activated by pressure on the foot pedal which is mounted on the lower end of the brake lever arm. The other end of the brake arm is attached to the frame of the car by a fulcrum pin which allows the arm and pedal to move forward and backward. Below the fulcrum pin, extending outward from the lever arm, is the master cylinder link pin or stud. The stud is round, about ½″ in diameter and 1″ in length. The stud is linked to the master cylinder by a rod with a hole near the end which slips over and around the stud. When the brake pedal is depressed, pressure is exerted on the link rod and through it into the master cylinder which activates the hydraulic system and the brakes on the wheels of the car. Also mounted on the master cylinder stud, over and around the end of the master cylinder link rod, is the stop or brake light switch. It is positioned so that slight pressure on the brake pedal causes contact between the switch button and the end of the master cylinder link rod, depressing the switch and activating the brake lights. To keep both the master cylinder link rod and the brake light switch from slipping back off the end of the stud, a hole is drilled through the diameter of the stud near its end, and a keeper pin or key is inserted in the hole.

Examination of the Ford automobile after Mrs. Schultz's accident revealed that the assembly just described had come completely apart. While the hole in the end of the stud had been drilled, the drill bit had broken off in the hole, completely blocking it. It was evident no keeper pin or key had or could have been inserted.

PEARSON'S PARTICIPATION.

Had Pearson's part in the events leading to Mrs. Schultz's accident been limited to the inspection and preparation reasonably to be required of an automobile dealer in connection with the sale and delivery of a new car, we think it

would have presented a classic case for the application of the doctrine of implied indemnity. Under such circumstances, Pearson would have been exposed to loss under the legal theory of strict liability in tort because of a manufacturing defect it did not create and which it had little or no opportunity to discover or correct. There are, however, other circumstances which bring Pearson in closer proximity to the loss and from which it might be concluded that Pearson actively participated in acts or omissions which caused Mrs. Schultz's injury independently and beyond the liability imposed by reason of its position as a retailer of a defectively manufactured automobile.

Mr. and Mrs. Schultz purchased the Ford from Pearson on October 1, 1965. In December of that year the automobile was involved in a rear-end collision not related to the present litigation. The car was taken to Pearson for repairs. After the repairs were completed on January 18, 1966, Mrs. Schultz, accompanied by her grandson, Allen Glasgow, age 20, went to Pearson to pick up the car. It needed gasoline and Mrs. Schultz asked her grandson to take the car to a nearby service station while she took care of other matters. While at the station, the service station attendant noticed that the brake lights were not working. The grandson took the car back to Pearson and informed a man he believed to be the assistant service manager the brake lights were not operating. That man checked the fuses which he found to be in order and then called another Pearson employee to fix the lights. The second Pearson employee lay over the seat with his head on the floor looking under the dashboard to locate the problem. He was joined by a third Pearson employee who also positioned himself to look under the dashboard of the car. After a few moments both men got out and checked the wiring in the trunk. One of the men then got back in the car and began tapping the brake pedal with his foot while the other watched the lights from the rear of the car. The tapping of the brake pedal continued for some time and increased in force and rapidity. After awhile, the brake lights began to work intermittently and then with regularity. All in all the men spent approximately 15 minutes working on the brake light problem. A Pearson employee said, ''Well, the car is all right now. Take it.'' A few moments later and seven miles down the road the brake assembly previously described fell apart and the accident happened.

The evidence indicates that at least two and possibly three

of Pearson's employees were in position to see and discover the defect after a closely related malfunction was called to their attention. The brake light switch was mounted on the very stud which was defective because of a missing keeper pin. Testimony at the trial revealed that slight slippage or movement of the switch and the master cylinder rod on the stud (possible only if the keeper pin was not in place) would cause a malfunction of the brake lights. Since the entire assembly failed only a few moments after the automobile left Pearson's premises, the deduction could be drawn that the brake light malfunction which Pearson's employees temporarily alleviated had its origin in the defective brake assembly heretofore described.

Under these circumstances, a serious question arises as to whether Pearson's participation in the events preceding the accident should operate to prevent its right to indemnity from Ford. ■ Whether indemnity should be allowed or denied in a given situation is generally a question of fact for jury determination (*Cahill Bros., Inc.* v. *Clementina Co., supra,* 208 Cal.App.2d 367, 381; *Baldwin Contracting Co.* v. *Winston Steel Works, Inc.,* 236 Cal.App.2d 565, 572-573 [46 Cal.Rptr. 421]; *O'Melia* v. *California Production Service, Inc., supra,* 261 Cal.App.2d 618, 622), but where the claimant's active participation in the wrong appears clearly and indisputably in the evidence, he may be precluded from indemnification as a matter of law (*Cahill Bros., supra,* 382-383).

■ Pearson's duty in connection with repairing the automobile after the rear-end collision, and in attempting to fix the brake lights when that malfunction was called to its attention, arose independently of and is to be distinguished from the duty which was imposed upon it by law as the retailer of the car. (See *Cahill, supra,* 382 and *King* v. *Timber Structures, Inc.,* 240 Cal.App.2d 178, 182 [49 Cal.Rptr. 414].) If Pearson participated in any real sense in causing Mrs. Schultz's injury, that participation was in the capacity of a garage repairman and its relationship as retailer was purely coincidental. In its capacity as repairman, as distinguished from retailer, we see no reason why its conduct should not be tested by the rules ordinarily applicable to garage repairmen under like circumstances. Having undertaken to perform the repair, Pearson's duty was to use ordinary care, and if in connection therewith it was guilty of negligent acts or omissions which proximately contributed to Mrs. Schultz's injury, then in equity and justice it should not be permitted to shift the burden of the entire judgment to Ford.

The following statement in *Cahill Bros., Inc.* v. *Clementina Co., supra,* 208 Cal.App.2d 367, 381-382 is helpful to an analysis of the problem. "The crux of the inquiry is participation in some manner by the person seeking indemnity in the conduct or omission which caused the injury beyond the mere failure to perform the duty imposed upon him by law [i.e., as a general contractor]. (Citations.) The thrust of these cases is that if the person seeking indemnity personally participates in an affirmative act of negligence, or is physically connected with an act or omission by knowledge or acquiescence in it on his part, or fails to perform some duty in connection with the omission which he may have undertaken by virtue of his agreement, he is deprived of the right of indemnity."

If the terms "active" and "passive" negligence must be used in making the determination upon which the right to indemnity is based, then the cases we have reviewed above require a distinction to be made. Acting solely as the retailer of the automobile, Pearson's negligence, if any, in failing to discover the brake defect would be "passive negligence," and as such, would not defeat its right to indemnity. In this instance, however, having gone beyond the duty imposed upon it by law, i.e., as retailer of the car, and having undertaken the repair of a part of the car closely associated with and inextricably related to the brake defect, Pearson's failure to discover the defect would be "active negligence," if, under all the circumstances and in the exercise of ordinary care, it should have made that discovery. ■ "Active negligence" on the part of the person seeking indemnity contributing to the injury or wrong bars his recovery. (*Cahill Bros., Inc.* v. *Clementina Co., supra,* 208 Cal.App.2d 367, 382; *O'Melia* v. *California Production Service, Inc., supra,* 261 Cal.App.2d 618, 621-622; *Ferrel* v. *Vegetable Oil Products Co., supra,* 247 Cal.App.2d 117, 120.)

■ Ford earnestly contends on appeal that Pearson's participation in the events leading to the accident is such as to preclude its right to indemnification as a matter of law. We disagree with this contention. No contention is made, nor would the record support a finding that Pearson's employees had actual notice or knowledge of the defect. The defect itself was extremely unusual, and reasonable minds could differ whether under the evidence and the applicable law Pearson's employees should have discovered it.

We do, however, agree with Ford's contention that the factual issue upon which the judgment requiring it to indem-

nify Pearson is based was not properly presented in the trial court. In various discussions between court and counsel, particularly in connection with motions made by both sides at the close of the evidence, all parties seemed uncertain as to whether the question to be decided was one of law or fact, and as to whether on this aspect of the case the jury should be used in an advisory capacity only. The trial court's final remarks in this connection were: "Well, I am inclined to feel that the factual questions should be submitted to the jury in the form of a special interrogatory, but in doing so I think we should limit ourselves in the instructions to the jury on that question and not get involved in the question of indemnity. It's simply what constitutes active and passive negligence, and limit it to that."

We can only conclude from the record the final decision was to submit the factual issue to the jury by way of a special interrogatory, and that the jury's answer to the interrogatory submitted was accepted by the court as determinative of that issue and adopted by it in the final judgment.

Pursuant to superior court rule #230 counsel for Ford submitted a form of special interrogatory which read: "Did Pearson Ford Company through its employees actively participate in acts or omissions which helped to bring about, or proximately resulted in, the accident whereby plaintiff suffered injuries?"

This form was modified by the trial judge and given to the jury in the following form: "Did the defendant PEARSON FORD Co. actively participate in causing or contributing to any defect in manufacture or design which proximately caused plaintiff's injuries and damages?"

It is apparent that the interrogatory as given to the jury could only be answered in the negative, and did not properly frame the issue to be determined. Pearson did not and could not have participated in causing or contributing to the defect in manufacture or design. The special interrogatory devised by the trial court and submitted to the jury was so defectively worded it deprived Ford of a fair hearing on the issue of indemnity.

If upon a new trial, it is found Pearson, as a garageman, was negligent and its negligence proximately contributed to the accident, the principles of contribution rather than indemnity would apply; in the event it is found Pearson, as a garageman, was not negligent or that its negligence did not proximately contribute to the accident, then the principles of

indemnity would apply and Ford should bear the entire burden of the judgment. The fact the judgment in favor of Mr. and Mrs. Schultz against Pearson was premised on the latter's responsibility as retailer under the principles of strict liability does not foreclose a determination respecting its responsibility to Mr. and Mrs. Schultz as a garageman under the principles of negligence for the purpose of determining how the damages awarded are to be apportioned between Pearson and Ford.

Ford further contends that because the defective part was manufactured by Kohn Engineering (a subcontractor) and not by Ford Motor Company, both Ford and Pearson are only derivatively liable, and thus neither should be entitled to indemnity from the other (citing *Horn & Barker, Inc. v. Macco Corp.,* 228 Cal.App.2d 96 [39 Cal.Rptr. 320]). We do not believe the cited case stands for the proposition urged, but prefer to rest our rejection of the contention on other grounds. While the defective brake mechanism was manufactured by Kohn, the record shows the final assembly of the mechanism in the car was performed by Ford. It was in Ford's factory that the keeper pin should have been inserted. The brake assembly on the car did not come apart because of the absence of a hole; it failed because of the absence of a keeper pin. The responsibility for inserting that pin rested squarely on Ford's shoulders. Ford is in no position to contend its liability is derivative only.

For the reasons stated above the judgment appealed from is reversed.

Brown (Gerald), P. J., and Coughlin, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied July 16, 1969.